BEERE v. BEERE *et al.*

Husband and Wife: MARITAL RIGHTS: CONVEYANCE IN FRAUD OF:
EVIDENCE. The defendants are mother and son. The son having
got plaintiff with child, and fearing that he would be obliged to
marry her to avoid a prosecution for seduction, secretly conveyed
all his property, consisting of chattels only, to his mother. The bill
of sale was made without the knowledge of the mother, and
expressed a consideration of "one dollar and love and affection,"
and was left with the son's attorney, to be delivered, as it would
seem, in case the son married the plaintiff; otherwise not. The
third day after it was executed the son did marry the plaintiff, and
the next day he abandoned her and absconded, and the day after
that the bill of sale was delivered to the mother. The mother
knew beforehand of the son's trouble with plaintiff; and when she
received the bill of sale she knew that he had married plaintiff
and had absconded. Although there was some evidence tending
to show that the real consideration for the bill was a debt owing
by the son to the mother, the existence of such debt is not satisfac-
torily established, and upon consideration of all the evidence (see
opinion), *held* that the bill of sale was made with the fraudulent
intent to defeat plaintiff of her marital rights, and that the mother
was charged with notice of such intent when it took effect as
between herself and her son,—that is, when it was delivered to her
and accepted by her,—and that she was properly adjudged to hold
the property in trust for the plaintiff. (Compare *Gainor v. Gainor*,
26 Iowa, 337.)

*Appeal from Des Moines District Court.*—HON.
CHARLES H. PHELPS, Judge.

FILED, FEBRUARY 11, 1890.

ACTION to avoid a sale, and declare a trust. Judg-
ment for plaintiff, and defendants appeal.

*Dodge & Dodge*, for appellants.

*A. H. Stutsman* and *D. Y. Overton*, for appellee.

GRANGER, J.—I. The defendants are mother and
son. The plaintiff and the defendant .Henry Beere are
husband and wife, and were married on the fifteenth
day of November, 1887. Soon after the marriage there

was born to them a child, the fruits of antenuptial inter-course. The day after the marriage, November sixteenth, the husband abandoned his wife, and the abandonment is continued. On the twelfth day of November, 1887, the husband executed a bill of sale of all his property, in value from one thousand to fifteen hundred dollars, to his mother, and left it with third parties. This conveyance was without the knowledge of the mother, and was delivered to her on the seventeenth day of November, after her son had married the plaintiff, abandoned her and absconded. The consideration expressed in the bill of sale is "one dollar and love and affection." The conveyance was made while the marriage contract was pending, but a question is made in argument as to the marriage being really contemplated. These facts are undisputed. Questions involved in dispute will be noticed in our consideration of the case.

It is plaintiff's theory of the case that the transfer of the property was made while under promise and in contemplation of marriage, and in fraud of her rights, and that the holding by Anna Beere should be in trust for her. With the facts as above stated, little doubt could well be entertained as to the validity of her claim. Some additional disputed facts must be determined, and aid in reaching a correct result. Appellant's claim is that the transfer of the property to the mother was not for the consideration expressed in the bill of sale, but that it was in payment of an indebtedness due from Henry to his mother, of an amount equal to or greater than the value of the property transferred, and that in the transfer there was no fraudulent purpose. As to the fact of indebtedness, we may say that the testimony leaves the case in considerable doubt; but we think it unnecessary to decide that point, as, conceding the indebtedness, if the transfer was fraudulent as to the plaintiff, it cannot be sustained. It seems to us that no serious question exists as to the purpose of Henry in making the transfer. He had for years resided on the farm of and with his mother, and worked the farm. His property was on the farm, and consisted of personal property.

The indebtedness claimed by his mother was in part for rent of the farm, and of quite long standing. He had never settled with his mother, and when he made the conveyance he did not know the amount of his indebtedness to her, nor could he reasonably approximate it. It is quite clear that when he made the conveyance he intended to avoid a matrimonial alliance with the plaintiff, if he could, as after making the bill of sale, and depositing it with a third party, he went to the plaintiff, and told her he was not going to marry her. This led to his arrest on a charge of seduction, to avoid which he married her, and at once violated his covenant. For some unexplained reason, although he had talked with his mother, and, in harmony with an honest purpose, she should have known the fact if she was to receive his property in payment of her claims, the intended conveyance is kept a secret from her; Henry only saying to her that she " would get a paper from Dodge." The marriage was repugnant to him. He surely did not intend to live with the plaintiff as his wife; and we think it equally plain that he did not intend that the plaintiff, whether she became his wife or not, should have his property, or any part of it, for her support, or that of their child, and in the fulfillment of such a purpose he made the bill of sale. The secrecy of the affair, with the surrounding inducements, leads one to believe that the attempt was a mere venture,—a playing fast or loose, as emergencies might require; to be a sale if necessary to escape the plaintiff, otherwise not.

But it is said by appellants, and the case may be so treated, that a fraudulent purpose on the part of Henry Beere is not enough; that Anna Beere must have participated in the fraud. The case, as to her, is very singular, conceding the indebtedness to her. She had never asked for payment, and did not expect it. The last time she saw Henry, he told her he was in a " girl scrape," and was going to leave the state. She says: "I suspected what the matter was." Now, on the seventeenth of November, which was after the marriage, she received the bill of sale. She says it was sent to

her, and on that day, but after she received the instrument, she learned of Henry's marriage. She says she had not requested a bill of sale, and had no knowledge of it, till it came to her that day. We think it important to have clearly in mind just the situation of the transaction at that time. The instrument expressed as a consideration "one dollar and love and affection." The instrument, on its face, purported a gift; and her only information as to Henry's intent in making it was what appeared on its face. We have read the abstract with the point in view; and, if it anywhere discloses when or how she has ever learned that Henry designed the bill of sale for any other purpose than that expressed therein, we have not discovered it. It does appear in the sworn statement of Mr. Dodge, who took the acknowledgment, that Henry said, when he made the instrument, that the real consideration was his indebtedness to his mother; but she was not there, and knew nothing of it. Before the bill of sale would be valid for the purpose intended by Henry, the mother must at least have known and concurred in the purpose. Now, when she received the bill of sale, on the seventeenth, what was her situation? She knew that Henry was in a "girl scrape;" that he had left the state because of it; and that he had given to her every dollar of his property just on the eve of his departure, and she must have understood that it was done with remarkable secrecy, not even making her, with her maternal and pecuniary interest, his confidant. With proper allowance for her inexperience, as a woman, we must believe that she then knew that the transfer to her was for a fraudulent purpose. But later the same day, she knew more,—that Henry was married to the plaintiff; that the "girl" Henry had referred to was his wife; that he had abandoned her. And she must then have better known the purpose of Henry in secretly conveying his property to her for "love and affection." Now, she could not agree to Henry's purpose,—conceding it to be to convey the property to pay his debts,—until she knew of it, and it is clearly apparent that she did not know of it at

this time. It is then a case of a voluntary transfer of property in contemplation, and under promise, of marriage. Such a transfer is fraudulent. *Gainor v. Gainor*, 26 Iowa, 337; *Way v. Way*, 31 N. W. Rep. (Wis.) 15. If we are not mistaken in the record, we see no way of escaping this conclusion. If the minds of the parties were met upon the intent, as claimed by appellants, it must have been after this; and the acceptance by the mother must have been with full knowledge of the fraudulent purpose, and in aid of it. Viewed in this light, it is a stronger case for plaintiff than that of *Way v. Way*, *supra*. But the entire absence of testimony showing that the mother ever had information of Henry's intent, so that she might concur therein, renders it unnecessary to consider this latter view of the question. The mother, in her testimony, repeatedly says that she took the bill of sale in payment of the debt; that Henry gave it to her to pay her, etc. But still there is the absence of proof as to how or when she ever learned of his purpose.

As taking this case outside of the rule above cited, as to conveyances made pending the marriage treaty, and in contemplation of marriage, appellants say that the fact that Henry, after making the bill of sale, went to the plaintiff, and told her he was not going to marry her, shows that he did not, when making the conveyance, "contemplate marriage." The position, from a legal view, is open to criticism, but we need not discuss it. The inference drawn from the facts is too broad. He was under promise of marriage, with a day fixed. He did marry her. The most that can be said is that he designed to escape marriage, if he could; but when he ever formed such a purpose is left to conjecture,—too much so to justify a finding of the fact as claimed.

II. It is next urged that the district court fixed the value of the property too high, and that the judgment is consequently too great, if it is to stand. We have examined the record with care in this respect, and think the judgment of the court below is fully sustained.

AFFIRMED.