E. S. WISHARD, Appellee, v. H. W. McNEILL, Appellant.

1. **Sales:** CONTRACT OF AGENT: LIABILITY OF PRINCIPAL. The defendant having written a scale company for terms for the erection of a track scale of a size indicated, and requested that quotations be sent to one "H., manager, Seymour, Iowa;" the scale company sent its representative to Seymour, where a contract was obtained for the sale and delivery of a scale of the kind above indicated, and at a price named, and signed by H., as manager. When the scale was delivered, there was endorsed upon said contract the following: "Received * * * the track scale, No. 1236, in good order, as per within contract, F. A. H., manager for Seymour Coal Co." The evidence showed that the Seymour Coal Co. was merely the name given to an enterprise conducted solely by the defendant. *Held*, that the defendant was liable for the price of the scale as provided in said contract with H.

2. ——: ——: ——. The defendant having referred the scale company to H. as manager of his business, *held*, that the company was warranted in arranging the details of the contract with H.

3. ——: MORTGAGE: ESTOPPEL. After the sale of the scale in question, the Seymour Coal Company, a corporation, was organized through the promotion of the defendant, and the scale company took from such corporation a mortgage upon the scale as security for the purchase price. The scale, however, had previously been sold to a third party, and the scale company took nothing by its mortgage. *Held*, that the company was not estopped by the acceptance of such mortgage from making any claim against the defendant for the purchase price.

4. ——: DECLARATIONS OF AGENT: COMPETENCY. The testimony of the representative of the scale company as to conversations with H. at the time the contract was made, *held*, admissible in view of the fact that H. was a witness for the defendant, and testified as to the details of the transaction, and that nothing was said to indicate that the defendant was liable for the scale.

5. ——: ADMISSIONS: EVIDENCE. Proof that the defendant agreed with the plaintiff that if he would foreclose the above mortgage on the scale, sell it for what it would bring, and credit the amount realized upon the contract, he would pay the balance, *held*, to be competent as an admission of liability on the part of the defendant, and as contradicting his testimony upon that question.

*Appeal from Polk District Court.*—HON. CHARLES A. BISHOP, Judge.

MONDAY, MAY 23, 1892.

THIS is an action at law, by which the plaintiff seeks to recover the purchase price of a railroad track scale, which it is alleged the defendant purchased of the Union Scale Company. It is claimed by the plaintiff that the Union Scale Company assigned the cause of action to the plaintiff. There was a trial by the court without a jury, and a judgment was rendered for the plaintiff. Defendant appeals.—*Affirmed.*

*Phillips & Day*, for appellant.

*Wishard & Sherman*, for appellee.

ROTHROCK, J.—I. The plaintiff, as his cause of action against the defendant, relies upon two written instruments, which are in these words:

"The Western Union Fuel Company. President's Office, Oskaloosa, Iowa. J. K. Graves, President; H. W. McNeill, Vice President; W. T. Phillips, Secretary.

"OSKALOOSA, 3–3–85.

"*Union Scale Company, Des Moines, Iowa.*

"DEAR SIRS:—I want a fifty-two foot track scale, built complete, without fail, this month, at Seymour, Iowa, a point on the southwest branch of the C., R. I. & P., in Wayne county. I will want ninety days, prefer four months. Address, with quotations:

"F. A. HILL, Manager, Seymour, Iowa.

"Res'y. Yours,

"[Signed] H. W. McNEILL."

Exhibit B is as follows:

"Size of platform scale, fifty-two feet. P. O., town of Seymour, county of Wayne, Iowa. Union Scale Company, March 5, 1885. Please send me from Des Moines one forty-ton, fifty-two feet, R. R. T. scale complete, triple beam. Seymour Coal Company to dig pit. Marked to Seymour, Wayne county, Iowa, via C., R. I. & P. R. R., for which we agree to pay six hundred and fifteen dollars, as follows: Within ninety days after scale is completed, payable at Des Moines Bank, Des Moines; and it is hereby agreed by the undersigned that the Union Scale Company do not relinquish the title to said scale until it is fully paid for, and upon default of the undersigned in the performance of any of the terms of this agreement the said Union Scale Company may declare the amount agreed to be paid by this contract due and payable, and they or their agents may, without process of law, take possession of and remove said scale, and collect reasonable charges for damages and expenses. It is also agreed

that the undersigned may retain possession of and use the said scales until he shall make default in the terms of this agreement. Union Scale Company agrees to have scales completed by April 1, 1885.

"F. A. HILL, Manager.

"[Indorsed:]

"Received March 27, '85, the track scale No. 1,236, in good order, as per within contract.

"F. A. HILL,

"Manager of Seymour Coal Co."

It appears that upon the receipt of the letter signed by the defendant, the president of the scale company went to Seymour and made the contract signed by F. A. Hill, Manager. The question to be determined on the trial was whether McNeill was personally liable upon the contract. The cause has once before been in this court upon an appeal by the defendant. 78 Iowa, 40. The appeal was from an order opening up a default and awarding a new trial to the defendant. It was claimed by the appellant in that case that the two writings above set out constituted a contract in writing, which could not be disputed by parol evidence, excepting to show fraud or mistake. This court, in the opinion in that case, used the following language in determining that question: "The first writing does not constitute an agreement, but is a statement, at most, of what the defendant wants, and a request for terms to be sent to a person designated as 'manager.' It does not say that such person is manager of the defendant's business, although such an inference might be warranted, in the absence of notice to the contrary. The second of the two instruments relied upon by the plaintiff is an order for scales, on terms therein designated. It does not name the defendant in any manner, and is signed 'F. A. Hill, Manager.' The receipt indorsed on the order shows that the scales were deliv-

1. SALES: contract of agent: liability of principal.

ered to Hill, 'manager for Seymour Coal Company.' If any one but Hill is shown to have received the scales, it must be the coal company. It is alleged by the defendant that Hill was not his agent, and was not authorized to contract for him in the purchase of the scales, and that the scale company knew that fact. The two writings together do not show anything to the contrary, and, if the scale company filled the order with knowledge that Hill was not acting for the defendant in making it, the first writing would not estop him from showing that fact. We think the petition for a new trial showed a meritorious defense to the action, and that it should not have been stricken from the files.'' We think, now that the question is fairly presented, and in the light of the evidence introduced upon the trial, that when the president of the scale company went to Seymour and took the order for this scale, he was warranted in believing and acting on the belief that he was dealing with an authorized agent of the defendant in making the sale. It is true that the name ''Seymour Coal Co.'' is used in the order, and in the indorsement the signature is ''F. A. Hill, Manager for Seymour Coal Co.'' But there is evidence to the effect that the ''Seymour Coal Co.'' was the mere name of an enterprise which was carried on by the defendant. At least the court was warranted in finding that, at the time these papers were executed and the scale delivered and put in place, the defendant was the promoter and real party in interest in carrying on the ''Seymour Coal Co.'' It appears that the said company was then neither a partnership nor a coporation. We need not set out the evidence in detail.

II. It is claimed that if it be found that Hill was manager for the defendant, he exceeded his authority and the contract he made is void because Hill exceeded his authority as agent in contracting that the Seymour Coal Company would dig the

2. —: —: —.

pit for the scale. It is claimed that the letter of the defendant required that scale to be built complete. The excavation of the pit was the mere removal of the earth, so that the scale could be properly built. It surely would be within the scope of the powers of a manager of the business to determine the incidents or details of the contract. The same may be said of the claim that Hill had no power to purchase a scale and stipulate that the vendor should retain the title to the scale until paid for. When the defendant put Hill in charge of the enterprise and referred the scale company to him as manager, and the president of the scale company, in response to the letter, went to Seymour and found him in charge of the work, he was warranted in contracting with Hill for a scale on "ninety days," and to make the passing of the title dependent upon the payments of the purchase price. There is nothing in McNeill's letter to the scale company which precludes such a stipulation as this.

III. We have said that the "Seymour Coal Co.," at the time the scale was contracted for, was neither a partnership nor a corporation. It was organized as a corporation in June, 1885.

3. ——: mortgage: estoppel.

After the company was incorporated, the scale company took a chattel mortgage upon the scale for the purchase money. This mortgage was not a lien on the scale. It was sold to one Thatcher before the company was incorporated, and he recovered the property by an action which was appealed to this court. See *Thatcher v. Scale Co.,* 74 Iowa, 117. It is claimed that the plaintiff, by taking the chattel mortgage, recognized the "Seymour Coal Co." as the purchaser, and is thereby estopped from making any claim against the defendant for the purchase price of the scale. It appears to us that the act of taking the mortgage lacks the essential elements of an estoppel. Perhaps as clear a statement of what is an estoppel by acts and declarations

as can be found is in Bouvier's Law Dictionary, 541.
It is as follows: "Such as arises from the acts and
declarations of a person by which he designedly induces
another to alter his position injuriously to himself."
We have found that the district court was warranted
from the evidence in finding that the defendant was
liable on the contract, and the evidence shows that he
afterwards counseled and promoted the organization of
the corporation. But before that the "Seymour Coal
Co." made a valid sale of the scale to Thatcher. The
scale company took nothing by its mortgage, and the
defendant did not alter his position injuriously to him-
self by reason of the mortgage. He does not show that
he gave up any security he held as a protection to him-
self against this claim, or in any other manner changed
his relations or obligations to any one connected with
this transaction.

IV. Englen, the president of the scale company,
was a witness in behalf of the plaintiff. He testified
that he went to Seymour and made the
contract with Hill. He was permitted to
state, over the objection of the defendant,

4. ——: declara-
tions of
agent: com-
petency.

that when he went to Seymour he inquired of the land-
lord of the hotel at which he stopped "for the manager
of McNeill's business there,—the coal company,"—and
that the landlord told him that the manager was
stopping at the house, and could be seen in the morn-
ing. There was no prejudice to the defendant in per-
mitting the witness to so testify. It did not tend to
prove that Hill was the manager for McNeill. It was
merely an inquiry describing the person for whom the
witness was seeking.

It was also objected that the witness was permitted
to state his conversation with Hill when the contract
was made. This conversation was competent as show-
ing that the witness sold the scale in good faith,
believing that Hill was manager for McNeill. It is true

that the statements of Hill could not be received as proof of his agency. But the deposition of Hill was introduced in evidence in which he gave his account of the interview with Englen, the president of the scale company. He denied that he had authority to bind McNeill in the purchase of any scale, and nothing was said between him and Englen that could have led Englen to believe that McNeill was responsible for the scale. In view of the fact that the testimony of Englen was plainly contradictory to that of Hill, we think it was not erroneous to admit it. It is true it was offered before the deposition of Hill was read to the jury, but, as the deposition was on file, and afterwards introduced in evidence, it became merely a question of the order in which the evidence was introduced, and for that reason was not prejudicial to the defendant.

V. The plaintiff was examined as a witness, and testified that it was agreed between himself and the defendant that the plaintiff should foreclose the mortgage on the scale, sell it for what it would bring, credit it on the contract, and that the defendant would pay the balance. This evidence was objected to on the ground that the action is not based upon any such agreement, and as being entirely immaterial. It is true the action was not based upon such a contract as was detailed by the witness. But the evidence was clearly competent as contradicting the testimony of the defendant as to his liability, and as an admission that he was liable for the purchase price of the scale.

5. ——: admissions: evidence.

We have disposed of all the questions in the case which appear to us to demand consideration, and our conclusion is that the judgment of the district court should be AFFIRMED.