WILLIAM HIGGINS *et al.*

*v.*

JOHANNA HIGGINS.

*Opinion filed December 20, 1905.*

1. PARTIES—*personal representative is not a necessary party to bill to assign homestead and dower.* A personal representative is not a necessary party to a bill by the widow to have homestead and dower assigned.

2. HUSBAND AND WIFE—*wife is within protection of the statute against conveyances made with intent to defraud.* A wife is within the protection of the statute against conveyances made with intent to defraud, and if the conveyance is purely voluntary it is not necessary the grantee shall participate in the intent of the grantor.

3. SAME—*effect where grantor had not selected his spouse.* If a conveyance is voluntary and without consideration and is made with the intention to defraud of her marital rights any person whom the grantor should marry, it makes no difference that he had not selected any particular person as his wife, since the fraudulent intent need not be directed against a particular person.

4. SAME—*voluntary conveyance made with intent to defraud a future wife of marital rights is void.* With respect to her marital rights the law affords the same protection to a wife as to a creditor, and a voluntary disposition of property made with specific intent to defraud a future wife of her marital rights is void, the same as though the conveyance was intended to defraud future creditors.

5. LACHES—*wife may be guilty of laches in seeking to set aside deed in fraud of marital rights.* As soon as she learns the facts a wife may, even though her husband is still living, bring suit to set aside a deed executed in fraud of her marital rights, and may therefore lose her right by long delay after she knows the material facts.

6. PLEADING—*allegations, proof and decree must correspond.* A decree granting relief upon a state of facts disclosed by the evidence but not alleged in the bill cannot be sustained where the bill was not amended to conform to the proof, even though the relief decreed is warranted by the facts proven.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

A. C. NORTON, and R. B. CAMPBELL, for appellants.

E. A. SIMMONS, and R. S. McILDUFF, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Johanna Higgins, was the second wife of John Higgins, and was married to him on May 17, 1887. She filed her bill in this case in the circuit court of Livingston county on March 19, 1903, for the purpose of setting aside a deed of eighty acres of land made by her husband, dated May 2, 1887, and recorded July 23, 1887, alleging that the deed was not in fact made and delivered until after her marriage, and was without consideration and in fraud of her marital rights. John Higgins and the grantees in the deed, with the husbands and wives of such of the children as were married, were defendants. The husband, John Higgins, was defaulted, and the other defendants, except Margaret Higgins, a daughter, answered, alleging that the deed was made, acknowledged and delivered on the day it was dated, and denying that it was executed to defraud the complainant of her marital rights. A replication having been filed, the cause was referred to a master in chancery to take and report the evidence and his conclusions. Before the master reported John Higgins died, and his death was suggested and leave was given to make his personal representative a defendant. A supplemental bill was filed on July 15, 1905, in which the death of John Higgins was alleged, and complainant claimed homestead and dower in the land and prayed that the same might be assigned and set off to her. The personal representative was not made a defendant, and counsel say that the complainant is herself the administratrix; but the personal representative was not a necessary party, since the dower and homestead are not subject to any rights of the administrator. Counsel for appellants say that the supplemental bill was not answered by Margaret Higgins, but the abstract filed by them shows that the bill was answered by all the defendants and that a repli-

cation to the answer was filed. The master reported that the deed was executed and delivered prior to the marriage and prior to the acquaintance of John Higgins with complainant, and he recommended the dismissal of the bill. Objections to the report were filed by the complainant, which were afterward heard as exceptions, and a decree was entered setting aside the deed as against complainant. The court found by the decree that the deed was executed at the time it bore date, prior to the marriage, but that it was executed without consideration and in contemplation of marriage with the complainant, and that it was executed and delivered for the fraudulent purpose of defrauding her of her marital rights. It was ordered that homestead and dower be assigned to her, and commissioners were appointed for that purpose. The defendants appealed from the decree.

The facts proved were, in substance, as follows: John Higgins was a widower with six children and owned a farm of eighty acres near Pontiac, which he occupied as a homestead with his children, except his son Patrick, who lived at Flanagan, about fourteen miles distant, where he kept a harness shop. On May 2, 1887, John Higgins made and acknowledged the deed in question, conveying the land to his children and reserving to himself a life estate. He showed the deed to the children who were at home and told them that he was going to Ireland; that he wanted to have things straightened up, so that in case anything should happen to him there would be nothing to worry him, and that Pat could take care of the deed. Shortly afterward he went to Flanagan and gave the deed to his son Patrick, saying that he wanted the son to take care of it and in case anything should happen to him it would protect the interest of the children in the property. He also said that he was going east and might go to Ireland. In fact, he contemplated going to New York to buy a piece of land and he did not intend to go to Ireland. Patrick took the deed and put it in his safe and paid no further attention to it. John Hig-

gins went to New York and from there went to Lowell,
Massachusetts, to visit a sister of his first wife, whom he
had never seen. When he arrived at Lowell he found that
she lived at Chicopee Falls, Massachusetts, and went there.
He was introduced to complainant by his sister-in-law and
within two days thereafter married her. He was near sixty
years old and she was about twenty-three and was living
with her parents. He told her that he owned one hundred
and sixty acres of land and owned personal property and a
good home. She accepted his proposal of marriage on ac-
count of his representations and for the purpose of bettering
her condition. He had owned the eighty acres, but if the
deed had been made and delivered his representation was
false even as to that. He only stayed at Chicopee Falls a
very short time, and immediately after the marriage he and
complainant came to the farm near Pontiac. About six
months afterwards, difficulties having arisen between her
and the children, she was informed of the deed. A daughter
with whom she had had some words had gone to Flanagan,
and at the suggestion of the daughter the deed had been put
on record. The complainant claimed that she had been de-
frauded of her rights and went back to Chicopee Falls to
her father and mother. The husband also left the farm and
went to Toledo, but after an absence of about two years
and a half complainant came back at his solicitation and
on his representations that the deed was wrong and that he
would have things changed and do right by her. Thereafter
they lived on the farm, and it was farmed by the son Wil-
liam, one of the appellants, as a tenant. Four children were
born to the complainant and her husband, and he seems then
to have realized the injustice of his arrangement and wanted
to make some arrangement so that his young children would
not be left entirely destitute. He told complainant that the
deed was made after he was married and dated back, and
promised to take some proceedings to have it set aside. He
evidently felt differently about the condition of things when

he saw the four little children of his second marriage entirely unprovided for while the grown-up children of the first marriage were to take all. He consulted an attorney with a view to having the deed set aside, but nothing was done, and complainant filed the bill, alleging, in accordance with his representations to her, that the deed was made after the marriage.

Appellee has assigned cross-errors on the finding of the court that the deed was made prior to the marriage. The testimony of the grantor, John Higgins, tended to prove that the deed was made after the marriage, but his recollection was very indistinct and his testimony appears quite unreliable. The evidence proves that the deed was made and acknowledged on the day of its date and was given to Patrick Higgins a few days afterward. There is more probability that the deed was only given to Patrick to hold in case anything should happen to the grantor on his journey. Nothing was said about putting it on record, and Patrick did not treat it as he would have treated an ordinary conveyance, by recording it. He put it in his safe and gave it no further attention until his sister came to him to have it recorded. On the other hand, the fact that a life estate was reserved to the grantor would not be consistent with the theory that the deed was only to be effective in case of his death by accident while on his journey. We think the record sustains the findings as to the execution and delivery of the deed.

The evidence justified the conclusion that although John Higgins had never met the complainant, he contemplated a second marriage at that time and the deed was made with a view to that event. The most reasonable explanation of his conduct when he went to Chicopee Falls is, that his visit to his sister-in-law was in view of marriage. She introduced him to the complainant, whom he immediately solicited in marriage, with the representations already mentioned as to his property. The marriage took place within two days, and

there is no reason to suppose that it was a case of a sudden attachment. The statement to the children that he was going to Ireland appears to have been untrue, and the explanation that he made the deed so that if anything should happen to him it would protect the interest of the children in the property does not look reasonable, in view of the fact that the deed made precisely the same disposition of the property that the law would have made if anything had happened to him. The reservation of the life estate could only have been inserted in the deed with the expectation that he would live to enjoy it, and there was no occasion whatever for making the deed giving the property to his children just as the law would have done, if it was made in view of some casualty to him on his journey. The conclusion drawn by the court is the only one that will fit with all the circumstances.

The conveyance was voluntary and without consideration, and if the intention was to defraud of her marital rights any person whom he should marry, it makes no difference that he had not yet selected the complainant as his spouse. There must be a fraudulent intent, but it need not necessarily be directed against a particular person. With respect to her marital rights the law affords the same protection to a wife as to a creditor, and a voluntary disposition of property made with the specific intent to defraud future creditors is void. (*Morrill* v. *Kilner,* 113 Ill. 318.) An intent to defraud by the conveyance of property may be ascertained by inference from the circumstances. (*Hughes* v. *Noyes,* 171 Ill. 575.) The wife is within the protection of the statute against conveyances made with intent to defraud, and if the conveyance is purely voluntary it is not necessary that the grantee shall participate in the intent of the grantor. It is as much a fraud for a man on the eve of his marriage, unknown to his wife, to make a voluntary conveyance of property to defeat the interests which she would acquire in the property by virtue of her marriage, as it is for a debtor

who contemplates contracting a debt to voluntarily dispose of his property in order to defeat the interest of future creditors. (14 Am. & Eng. Ency. of Law,—2d ed.—252.) We cannot say that the court was wrong in the conclusions of fact contained in the decree.

It is further contended that the complainant was barred by her own *laches* from obtaining relief. The circumstances were somewhat peculiar. When she first learned that the deed had been made it does not appear that she was aware of the facts which would enable her to have it set aside or of her rights in relation to it. When she came back it was upon representations of her husband that the record was wrong and he would have it corrected and do right by her. They were in possession of the property, and she was apparently resting in the belief that he would in some way fulfill his promises to her. When she obtained any further information from her husband it was to the effect that the deed had been executed after the marriage, and as she did not join in it it would be no bar to her right of dower or homestead if she should outlive her husband. Whenever she learned the facts in the case she had a right to institute a suit at once to set aside the conveyance as being in fraud of her marital rights. Although a wife cannot assert an inchoate right of dower in the lifetime of her husband and is not guilty of *laches* in failing to do so, she may set aside a deed executed in fraud of her marital rights. (*Freeman* v. *Hartman,* 45 Ill. 57; *Lohmeyer* v. *Durbin,* 213 id. 498.) She might therefore lose her right to relief by long delay in bringing suit after she knew the material facts, but we can not say in this case that she was barred by *laches.*

The tenant, William Higgins, built a house for himself on the premises, but that was not to be taken into account in the assignment of dower. Patrick sold his interest to William, and William loaned $500 to one of his sisters and took a mortgage on her interest in the property to secure the loan. These transactions were between the grantees in the

deed, and as William lived on the place it is a fair inference that he knew of the claims made by the complainant and his father with respect to the deed. So far as the mortgage is concerned, there is nothing to show that the interest of the mortgagor will not be sufficient to secure the debt after homestead and dower shall be assigned.

The decree, however, must be reversed for the reason that the bill does not contain allegations of the facts upon which the relief was granted. It is a primary rule, always enforced and sustained by numberless decisions, that the allegations of the bill, the proof and the decree must correspond; that facts disclosed by the evidence which would warrant relief will not sustain a decree where the facts are not alleged in the bill. (*Dorn* v. *Geuder,* 171 Ill. 362.) The bill in this case was framed upon the theory that the deed was executed after the marriage and dated back prior to the marriage for the purpose of defrauding the complainant. It contained no allegation that it was executed on the eve of the marriage with a fraudulent intent to defraud the future wife. In such a case the court will permit the complainant to amend the bill so as to correspond with the proofs; but the bill was not amended, and the court by the decree found a different state of facts from those stated in the bill. The decree must be reversed, but, inasmuch as the reversal is not upon the merits, the parties will pay their own costs of the appeal.

The decree is reversed and the cause is remanded, with leave to the appellee to amend her bill to correspond with the proofs, and if such amendment is made the circuit court is directed to re-enter the decree heretofore entered, and the parties will pay their own costs in this court.

*Reversed and remanded.*