LOUISA C. BEECHLEY, v. NATHANIEL K. BEECHLEY, Appellant.

**Husband and wife:** CONVEYANCES BEFORE MARRIAGE: FRAUD: EVIDENCE. The general rule is that a voluntary conveyance made with intent to defraud the party who subsequently becomes the husband or the wife of the grantor is void, whether the future spouse was selected at the time of the conveyance or not. Overruling the case of *Gainor v. Gainor,* 26 Iowa, 337, which limits the rule to cases where the spouse was then selected.

In the instant case the evidence fails to show intent to defraud.

**Same:** MISREPRESENTATIONS OF GRANTOR. Misrepresentation by a grantor, in an ante-nuptial conveyance, of the value of his property is not competent on the question of fraud in its execution, as against the subsequent husband or wife.

**Fraudulent conveyances:** INTENT: KNOWLEDGE OF GRANTEE: EVIDENCE. Where there is an adequate consideration for a conveyance from a father to his child by a deceased wife the conveyance is not voluntary and will not be set aside as fraudulent at the suit of a second wife, in the absence of knowledge by the grantee of intent to defeat plaintiff's marital rights; and a request of the grantor to withhold the conveyance from record, under circumstances which would cause the grantee no surprise, is not sufficient to charge him with knowledge.

**Same:** FALSE REPRESENTATIONS: EVIDENCE. The general rule that a voluntary conveyance made in contemplation of marriage will be declared fraudulent does not apply to children by a former wife, where there were no false representations and only reasonable provision was made.

Evidence held insufficient to show false representations.

**Estoppel in pais:** FAILURE TO ASSERT TITLE. A child to whom a father has conveyed property prior to his second marriage is not estopped to assert his ownership, on the ground that it was in fraud of marital rights, by failing to assert his ownership when called upon subsequently to the marriage to take an acknowledgment of the father conveying other property to another child, where there was no occasion for him to speak.

WEAVER and LADD, JJ., dissenting.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

THURSDAY, JULY 12, 1906.

Rehearing denied, Thursday, April 11, 1907.

SUIT in equity to set aside a deed to land. The facts sufficiently appear in the opinion. Judgment for the plaintiff. The defendant appeals. *Reversed.*

*Dawley, Hubbard & Wheeler* and *Lewis Heins,* for appellant.

*Chas. W. Kepler & Son,* for appellee.

SHERWIN, J.—The plaintiff is the widow of Jesse Beechley, having been his third wife. The defendant is the oldest son of said Jesse Beechley by his first wife. The

1. HUSBAND AND WIFE: conveyances before marriage: fraud: evidence.

second wife of Jesse Beechley was a sister of the plaintiff, and died in the latter part of December, 1889. At the time of her death and for many years prior thereto, Jesse Beechley owned about six hundred and sixty-five acres of land, including the land in controversy herein, four hundred and fifty acres. A deed to this four hundred and fifty acres of land was executed and delivered by said Jesse Beechley to the defendant December 17, 1890. About two weeks after the death of his second wife, Mr. Beechley asked the plaintiff to become the third Mrs. Beechley, but she refused to do so, and they did not meet again, nor was there any correspondence between them until in August, 1891, at which time Mr. Beechley again made the plaintiff an offer of marriage, which was accepted, and followed by a marriage on the 8th day of Sep-

tember, 1891. At the time of their marriage, the plaintiff was about sixty-six years old and Mr. Beechley nearly seventy. In the spring of 1890, and again in July, 1891, Mr. Beechley proposed marriage to another widow, and was both times rejected. Not until after the plaintiff and his father had been married, did the defendant have any information or intimation that his father contemplated another marriage. At the time he executed and delivered to the defendant the deed in question, Mr. Beechley still had two hundred and fifteen acres of land left, which was occupied as a homestead by himself and the plaintiff until 1893, when it was deeded by Mr. Beechley to a son by his second wife, the plaintiff's sister, in pursuance of a promise made to her before her death; the plaintiff voluntarily joining in the conveyance thereof. When the land in question was conveyed to the defendant, it was encumbered by a mortgage that he assumed and which, at the time of the trial below, amounted to nearly $13,000. At the time of this conveyance the grantor also owed other debts amounting to $3,000 or $4,000, so that his total liabilities at that time were somewhere from $15,000 to $16,000. Before conveying the two hundred and fifteen acres of land, Mr. Beechley had provided a large amount of material for the erection of a new house thereon, and after the conveyance he rebought this material from his grantee, moved it on to the four hundred and fifty-acre tract that he had conveyed to the defendant, and in 1894 built thereon a new house which he and the plaintiff occupied until his death early in 1904, and which the plaintiff still occupies. The defendant's deed was not recorded until after his father's death because of the grantor's request, made at the time of its execution and delivery, that it be not sooner recorded. The record shows that the plaintiff had no knowledge of the deed to the defendant until it was recorded, and it may fairly be said that, at the time of the marriage, the plaintiff supposed that her husband owned the four hundred and fifty acres in controversy as well as the

other two hundred and fifteen acres.  The plaintiff bases her right to relief on allegations of fraud in the conveyance to the defendant, and on an estoppel which will be hereinafter more fully noticed.

We are clearly of the opinion that fraud cannot be predicated on the facts disclosed.  As we have already shown, there was no engagement nor any negotiations therefor until eight months after the conveyance was made.  It is true that the grantor had theretofore proposed marriage to the plaintiff, and some months after her refusal to marry him he had proposed to another and had been rejected; and it may be said perhaps, that he had not entirely abandoned the thought of another marriage if he could find a willing woman; while, on the other hand, three rejections within a year would ordinarily be entirely sufficient to cool the " Douglas' blood " were age, alone, insufficient therefor. Aside from the proposals which we have mentioned and the fact of his subsequent marriage to the plaintiff, there is nothing in the record tending to show that, at the time of this conveyance, the grantor contemplated another marriage, and if he did not, there can be no fraud therein. Even if he then had a fixed purpose to marry as soon as he could find someone who was willing to become his wife, no negotiations or engagement therefor were then pending, and, under the rule of our own cases, the conveyance was not fraudulent as to the plaintiff.  In *Gainor v. Gainor,* 26 Iowa, 337, the conveyance sought to be set aside was made seven months before the marriage, and four months before negotiations therefor began.  We held it utterly impossible that the conveyance could have been intended as a fraud, and said:  " A voluntary settlement or conveyance of property by a wife or husband prior to marriage, will be held fraudulent as to the marital rights of the one to whom she or he may afterward be joined in matrimony, only when made in contemplation of marriage, and pending a treaty of

marriage between the parties.    See, also, *Hamilton v. Smith,* 57 Iowa, 15; *Beere v. Beere,* 79 Iowa, 555.

The Gainor case undoubtedly states the rule announced in nearly all of the cases treating the subject.    Indeed, we have found but one case among a great many which we have examined that holds that an antenuptial voluntary conveyance, if made with intent to defeat the marital rights of any person whom the grantor might subsequently marry, would be void as to such rights whether the person was then selected or not.    Such is the rule adopted in *Higgins v. Higgins,* 219 Ill. 146 (76 N. E. 86).    After full consideration of the question, we are of opinion that the rule is sound.    If the intent to defraud actually exists, it is immaterial whether a particular person has already been selected against whom it will operate.    So far then as *Gainor v. Gainor* limits the application of the rule in this class of cases to  cases where negotiations or an engagement exist at the time of the conveyance, it must be and is overruled. If the conveyance is made in contemplation of marriage and with intent to deprive the spouse of the marital rights which she would otherwise acquire, it is enough to invalidate the conveyance so far as it affects such rights.    But if there be no treaty of marriage at the time of the conveyance, it is, in our judgment, a strong circumstance tending to disprove fraud.

There is evidence tending to show actual misrepresentation by the grantor as to the amount of his property, but it is contended that the evidence is incompetent.    We 2. SAME: misrepresentations of grantor. think the contention is correct, but do not deem the question at all controlling on this branch of the case.    In some of the earlier cases it was thought that a distinction should be made between silence or failure to disclose the true situation, and actual misrepresentation as to property.    The later decisions, however, and the weight of authority in this country, at least, hold that the ignorance of the spouse of a settlement or convey-

ance pending a treaty of marriage is fatal thereto, though no actual misrepresentation or deceit appear. *Chandler et al. v. Hollingsworth et al.,* 3 Del. Ch. 99, and cases cited. This is an exhaustive and leading case on the subject, and contains a review of the early English and many of the American cases. *Collins v. Collins,* 98 Md. 473 (57 Atl. 597, 103 Am. St. Rep. 408, and note 418.)

The deed to the land in question recites a consideration of $16,000, and the uncontradicted evidence shows that the defendant assumed the payment of mortgages on the land and 3. FRAUDULENT CONVEYANCES: intent: knowledge of grantee: evidence. other indebtedness of his father amounting in the aggregate to the consideration named in the deed. The evidence shows the land to have been worth from $16,000 to $22,000, but in addition to the indebtedness assumed by the defendant the father retained a life interest therein and the possession. It cannot be said, then, that the conveyance was voluntary, and it not being voluntary, it can only be set aside on proof that the defendant was a party to the fraudulent intent of the grantor, if any such intent existed.

There is absolutely no evidence of fraud on the part of the defendant, unless it be said that the request to withhold the deed from record proves fraud. There are two sufficient answers to this suggestion: The grantor gave no reason for his request, and his financial condition at that time was such that it would cause the grantee no surprise. Fraudulent intent will not be presumed, and secrecy alone does not necessarily tend to establish fraud. *Hamilton v. Smith, supra; Luckhart v. Luckhart,* 120 Iowa, 248.

The general rule that a voluntary conveyance made in contemplation of marriage will be declared fraudulent, has a well-settled exception in cases of conveyance to children 4. SAME: false representations: evidence. by a former wife, it being generally held that where no false representations are made to the prospective wife, and only reasonable provision is made for such children in proportion to his or her estate, such

conveyance is not necessarily fraudulent, but the question in such cases is, was fraud intended? *Hamilton v. Smith, supra;* note in 103 Am. St. Rep. 418.   There is no competent evidence that Mr. Beechley made any false representations as to his property before his marriage to the plaintiff, and such representations made thereafter are immaterial. He had two hundred and fifteen acres of land left, worth one-third as much as the land conveyed, at least, and amply sufficient to afford him and the plaintiff reasonable support, and sufficient to afford her reasonable maintenance after his death.   Fraud must be clearly proven, and from the record before us we are unable to say that any fraud was intended by the grantor, and we are very clear that no fraud on the part of the defendant is shown.   *Hamilton v. Smith, supra; Butler v. Butler,* 21 Kan. 521 (30 Am. Rep. 441).   It is true as we have already said, that the grantor remained in possession and made certain improvements on the land, but he held a life estate therein which was of value to him, and such possession and improvements do not alone establish adverse possession or a trust for the benefit of the plaintiff.   *Luckhart v. Luckhart, supra; McClenahan v. Stevenson,* 118 Iowa, 106.

When the two hundred and fifteen acres was conveyed, the defendant, at the request of his father, prepared a deed conveying the same, and later went to his father's home to witness its execution and to take the acknowledgments thereto.   The plaintiff claims that, at the time of its execution and as an inducement for her to sign it, it was talked by those present that there would be four hundred and fifty acres left, and that her husband said, " that will be enough for us," and that he further said he would build a new house on it.   The plaintiff says she thinks that conversation occurred in the presence of the defendant.   She bases her claim to an estoppel on his failure to then disclose his ownership of the four hundred and fifty acres of land.   Her testimony as to the statements of her husband at that time

is clearly incompetent under section 4604 of the Code. But aside from that, and aside from her uncertainty as to the defendant's presence when such statements were made, all of the other persons present when the deed was executed and acknowledged, testify that no such conversation was had at that time.

If it were true that the plaintiff were induced to sign the deed by representations, made in the presence and hearing of the defendant, that the four hundred and fifty acres of land still belonged to her husband, we

5. ESTOPPEL *in pais:* failure to assert title.

think it would have been his legal duty to inform her that he held the title thereto, for silence when one should speak may create an estoppel as effectually as a declaration. But an estoppel in *pais* is based on fraud, and the conduct relied upon to establish it must be such as to amount to fraud, actual or constructive. There must be deception, and change of conduct in consequence thereof. *Garretson v. Life Ass'n,* 93 Iowa, 402. To create an estoppel in the instant case, it is essential that the defendant should have spoken and disclosed his title, and that the plaintiff was induced to sign the conveyance by his silence. *Garretson v. Life Ass'n, supra; Jamison v. Miller,* 64 Iowa, 402. An estoppel by acts and declarations, or by silence, is defined by Bouvier in his Law Dictionary, 541, as follows: " Such as arises from the acts and declarations of a person by which he designedly induces another to alter his position injuriously to himself." See, also, *Wishard v. McNeill,* 85 Iowa, 474. If nothing was said in the defendant's presence about the property remaining after the conveyance of the two hundred and fifteen acres, the defendant certainly was not bound to disclose his ownership of the four hundred and fifty acres simply because he was called upon to take the acknowledgments of the grantors of the two hundred and fifteen acres, for the plaintiff could not have acted on his silence. There can be no estoppel by silence unless there is a duty to speak.

The transaction concerned land in which the defendant was in no way interested, and he was not bound to disclose to the plaintiff a perfectly legal transfer of other lands made two or three years before.     5 Current Law, 1288.     The plaintiff is clearly not entitled to have the deed set aside, and to have her statutory interest in the four hundred and fifty acres of land.

Claim is made that the plaintiff put some of her own money into the land in question by way of improvements made thereon by her husband.   She sold a little place of her own for $800 and she testifies that some of the money received from this sale was so used.   She is unable to show, however, that any certain sum was used for the purpose, and we, of course, cannot supply the want of testimony on the subject, and cannot therefore find that any substantial amount was so used.

The judgment must be *reversed*.

WEAVER, J. (dissenting).   Without questioning the soundness of the legal propositions affirmed in the foregoing opinion, I am constrained to dissent from the conclusion that the charge of fraud is not supported by the evidence.   Taking the history of the case from the first conveyance of the four hundred and fifty acres to appellant to the last conveyance to another son of two hundred and fifteen acres, it discloses, in my judgment, a concerted plan to deprive the plaintiff of all interest in her husband's estate, and, after she has served and cared for the husband until his death, turn her out upon the world penniless.   I further hold that the plea of estoppel against the defendant has sufficient support in the record.

LADD, J., joins in this dissent.