(No. 12304.—Reversed and remanded.)

MARY JARVIS, Plaintiff in Error, vs. WILLIAM F. JARVIS
et al. Defendants in Error.

*Opinion filed February 20, 1919.*

1. HUSBAND AND WIFE—*when conveyance before marriage is in
fraud of marital rights.* Where a prospective husband transfers
his property before marriage with the intention to defraud his in-
tended wife of her rights of dower or of any other interests she
might have as his wife in his property, the transfer, in equity, is
a fraud upon the marital rights of the wife.

2. SAME—*where conveyance is in fraud of marital rights the
wife stands in position of defrauded creditor.* With respect to her
marital rights the law affords the same protection to a wife as to
a creditor, and a bill to set aside a deed made before marriage in
fraud of the wife's marital rights is analogous to a creditor's bill.

3. SAME—*time at which property is transferred before mar-
riage is material on question of fraud.* The time at which a man
transfers his property before marriage is material in determining
whether the conveyance can be deemed a fraud on the future wife's
marital rights.

4. SAME—*fraudulent intent must be proved to set aside a con-
veyance as in fraud of marital rights.* To set aside a conveyance
made by a husband before marriage as being in fraud of the wife's
marital rights, proof of actual fraudulent intent on the part of the
grantor is essential, and the mere fact of concealment or secrecy is
not conclusive of fraud.

5. SAME—*conveyance before marriage without the knowledge
of the intended wife is prima facie fraudulent—burden of proof.*
Where a voluntary conveyance is made by the grantor shortly be-
fore his marriage without the knowledge of the other party to the
marriage a *prima facie* case of fraud is presented, subject to be
explained by the parties interested, and the burden is upon the
grantee to establish the validity of the deed

6. SAME—*whether a conveyance before marriage is fraudulent
depends on circumstances in the case.* Each case as to a transfer
of property before marriage being a fraudulent conveyance must
be considered and decided in the light of the special facts surround-
ing that case.

7. SAME—*meaning of the term "in contemplation of marriage."*
The term "in contemplation of marriage," as used in decisions in
cases involving the question whether a conveyance before marriage

is fraudulent, is given a more elastic and less restricted meaning as to time than is ordinarily given to the phrase "eve of marriage," and the term has no rigid meaning as to the exact period of time within which such transfers are fraudulent.

8. SAME—*what questions must be considered in determining whether husband intended to defraud wife.* Where a man makes a conveyance of his property before marriage, whether the conveyance is to provide for his children and not to defraud the wife, whether the advancement is reasonable when considered with reference to the grantor's property, and whether it was made with the knowledge of the intended wife, are questions which must be considered in determining whether the conveyance is fraudulent.

9. SAME—*when a bill to set aside deed as in fraud of marital rights should not be dismissed on demurrer.* A bill to set aside a deed as in fraud of the wife's marital rights should not be dismissed on demurrer although it shows that the conveyance was made nearly two years before marriage, as other conditions and facts connected with the transfer must be considered in addition to the length of time that the conveyance was made before marriage.

10. SAME—*meaning of the word "eve" as an expression of time.* Ordinarily the word "eve" means the evening of the day before another day, but it may be defined as meaning the period of time immediately preceding an event.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

JOHN S. REYNOLDS, for plaintiff in error.

GRANGER, DOUGHERTY & NOURIE, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by Mary Jarvis, plaintiff in error, in the circuit court of Kankakee county, praying to set aside a deed conveying certain real estate in said county and that she be allowed dower and homestead in said real estate. A demurrer filed to the bill by defendants in error was sustained by the trial court and a decree entered dismissing

the bill for want of equity at complainant's costs. From that decree this writ of error was sued out.

The bill alleges that the plaintiff in error, on or about July 18, 1915, intermarried with Albert Jarvis, late of said county; that on February 1, 1917, Jarvis departed this life intestate, leaving plaintiff in error, his widow, and William F. Jarvis, Rose Jarvis, Fred Jarvis and Louise Jarvis Senesac as his only heirs; that on September 16, 1913, Albert Jarvis was the owner of record of 120 acres of farm lands in said county, valued at $36,000, which was the only real estate owned by him and represented all or nearly all his property rights except a small amount of personal property; that on September 16, 1913, Jarvis, "in contemplation of marriage, without consideration and for the purpose of defrauding his future wife of her marital rights, and without consideration and as a voluntary conveyance and gift, executed and delivered his certain deed of conveyance of the above described premises and real estate to the said William F. Jarvis; and further alleges that at the same time and for the fraudulent purpose of defrauding his future wife of her marital rights, and especially to deprive her of her dower, homestead estate or widow's award in any of the property of the said Albert Jarvis, but reserving to himself a certain annuity during his lifetime, and also reserving to the said Rose Jarvis a certain annuity during her lifetime, the said Albert Jarvis took from the said William F. Jarvis a certain trust deed securing the payment of the said annuities, running from the said William F. Jarvis to one Frederick E. Legris as trustee therein, which said trust deed was duly acknowledged and recorded and is now resting upon the said described premises as a purported lien thereon, and is a cloud upon the title of the said premises and real estate and should be declared null and void as against the rights and interests of your oratrix." The bill further alleges that prior to her marriage to Jarvis he represented to her that he was the owner of a

good farm of 120 acres, worth $40,000, located within three and one-half miles of Kankakee City, and that said farm would be their future home; that he represented he had other property and property interests and a good income which he received annually, and told her frequently before their marriage that he would provide her with a good home and ample support, all of which representations and promises oratrix believed to be true and relied upon in accepting the proposal of marriage; that she never had any knowledge or information of such conveyance of the farm until some time after her husband's death; that during all of their married life he concealed from her all knowledge or information that said deed had been made, and caused her to believe, and in truth she did believe during all that time, that he owned said farm free and clear of all incumbrances; that for some years prior to his death he had a safety deposit box in a Kankakee bank, wherein he kept his moneys and papers and other valuables; that for about a year previous to his death William F. Jarvis had a key to said deposit box and access to it and frequently put in and took out, as he pleased, anything contained therein; that on January 8, 1917, William F. Jarvis went to the bank and took out the contents of the deposit box and surrendered the key to the bank. The bill further charges on information and belief that there were certain moneys, notes and other securities of Albert Jarvis in the deposit box, which were taken out by William F. Jarvis and for which he has not in any way accounted; that William F. Jarvis ever since and prior to the making of said deed has contrived and conspired with Albert Jarvis to hide and conceal all of Albert Jarvis' property and to make it appear that at the time of Jarvis' death he had no property, personal or real. The bill prays that this deed and the trust deed may be set aside as clouds upon plaintiff in error's title to said premises, and that plaintiff in error be decreed to recover her dower and homestead rights and a widow's award out of

said real estate and that a sale of sufficient of said property be had to meet the award.

The sole question involved here is whether the conveyance of this property by Albert Jarvis to his son some twenty-two months before his marriage with plaintiff in error was a fraud upon her marital rights. If a prospective husband transfers his property before marriage with the intention to defraud his intended wife of her rights of dower or of any other interests she might have as his wife in his property, such transfer is generally in equity held a fraud upon the marital rights of the wife. (21 Cyc. 1156, and cases cited.) Bills to set aside such transfers of property before marriage "have been looked upon as analogous to creditors' bills, and in *Higgins* v. *Higgins,* 219 Ill. 146, this court held that a wife whose husband had conveyed his real estate with intent to defraud her of her marital rights was within the protection of the statute against conveyances made with intent to hinder and delay creditors." (*Deke* v. *Huenkemeier,* 260 Ill. 131.) In *Higgins* v. *Higgins, supra,* this court stated (p. 151) : "The conveyance was voluntary and without consideration, and if the intention was to defraud of her marital rights any person whom he should marry, it makes no difference that he had not yet selected the complainant as his spouse. There must be a fraudulent intent, but it need not necessarily be directed against a particular person. With respect to her marital rights the law affords the same protection to a wife as to a creditor, and a voluntary disposition of property made with the specific intent to defraud future creditors is void. (*Morrill* v. *Kilner,* 113 Ill. 318.) An intent to defraud by the conveyance of property may be ascertained by inference from the circumstances. (*Hughes* v. *Noyes,* 171 Ill. 575.) The wife is within the protection of the statute against conveyances made with intent to defraud, and if the conveyance is purely voluntary it is not necessary that the grantee shall participate in the intent of

the grantor. It is as much a fraud for a man on the eve of his marriage, unknown to his wife, to make a voluntary conveyance of property to defeat the interests which she would acquire in the property by virtue of her marriage, as it is for a debtor who contemplates contracting a debt to voluntarily dispose of his property in order to defeat the interest of future creditors." (Citing authorities.)

Counsel for defendants in error concede these general rules of law as applied to conveyances of property made prior to marriage with the intention of defeating the rights of the wife, but they argue that the decisions in this State hold that in order to make a case which is entitled to the aid of a court of equity the deed must have been made on the eve of the marriage and in contemplation thereof, (*Freeman* v. *Hartman,* 45 Ill. 57; *Dunbar* v. *Dunbar,* 254 id. 281; *Daniher* v. *Daniher,* 201 id. 489;) and that under the facts here the deed was not so made. In *Freeman* v. *Hartman, supra,* the deed was executed three days before the marriage. In *Daniher* v. *Daniher, supra,* the deed was executed two weeks before the marriage, and at that time there was an engagement existing between the parties. In *Jones* v. *Jones,* 213 Ill. 228, where forty acres was conveyed seven years before the marriage and forty acres conveyed two weeks before the marriage, it was held that the wife could be heard to complain of the last conveyance but not as to the first one. In *Dunbar* v. *Dunbar, supra,* the engagement took place February 4, the deed was made April 1 and the marriage took place in June of the same year. In *Deke* v. *Huenkemeier, supra,* the record does not show how much time elapsed between the making of the deed and the marriage, but the opinion shows that the parties were engaged at the time the deed was made. In *Higgins* v. *Higgins, supra,* while the deed was executed before any engagement existed between the parties, the marriage took place within two weeks from the signing of the deed and the deed was not recorded until after the marriage.

Manifestly, the time at which a man transfers his property before marriage is material in determining whether such conveyance can be deemed a fraud on the future wife's marital rights. "To render it invalid it must, as a general rule, have been made in contemplation of the marriage. Therefore, if it was made before courtship or engagement and not in contemplation of the marriage, no claim that a fraud upon the future wife's marital right was perpetrated can be sustained. Still, it has been held, and such seems to be the trend of the modern authorities, that if a conveyance is voluntary and without consideration and the intention of the grantor was to defraud any person whom he should marry out of her marital rights, it makes no. difference, as affecting the validity of the transaction, that he had not yet selected any particular person as his wife. If, however, there was no treaty of marriage at the time of the conveyance it is a strong circumstance tending to disprove fraud in fact." (13 R. C. L. 1083, citing authorities in various jurisdictions, including *Higgins* v. *Higgins,* *supra,* from this State.)

In *Beechley* v. *Beechley,* 13 Ann. Cas. 101, (134 Iowa, 75,) it appears that there was no engagement or any negotiations for marriage until eight months after the conveyance was made; that the grantor or prospective husband had theretofore proposed marriage to the plaintiff, and some months after her refusal to marry him he had proposed to another and had been rejected; that aside from these proposals and the fact of his subsequent marriage to the plaintiff there was nothing in the record that tended to show that at the time of the conveyance the grantor contemplated another marriage, and if he did not there could be no fraud therein. The court said (p. 103): "Even if he then had a fixed purpose to marry as soon as he could find someone who was willing to become his wife, no negotiations or engagement therefor were then pending, and under the rule of our own cases the conveyance was not fraudulent as to

the plaintiff." The court then refers to *Gainor* v. *Gainor* and other cases theretofore decided by the same court, and continues: "The *Gainor case* undoubtedly states the rule announced in nearly all of the cases treating the subject. Indeed, we have found but one case among a great many which we have examined that holds that an ante-nuptial voluntary conveyance, if made with intent to defeat the marital rights of any person whom the grantor might subsequently marry, would be void as to such rights whether the person was then selected or not. Such is the rule adopted in *Higgins* v. *Higgins, supra.* After full consideration of the question we are of opinion that the rule is sound. If the intent to defraud actually exists, it is immaterial whether a particular person has already been selected against whom it will operate. So far, then, as *Gainor* v. *Gainor* limits the application of the rule in this class of cases to cases where negotiations or an engagement exists at the time of the conveyance it must be and is overruled. If the conveyance is made in contemplation of marriage and with intent to deprive. the spouse of the marital rights which she would otherwise acquire it is enough to invalidate the conveyance so far as it affects such rights, but if there be no treaty of marriage at the time of the conveyance, it is, in our judgment, a strong circumstance tending to disprove fraud." At the end of that case is a note containing many authorities from other jurisdictions discussing this question, among others decisions from several States, including Utah, which approve the rule laid down by this court in *Higgins* v. *Higgins, supra,* that the fraudulent intent need not necessarily be directed against a particular person.

In *Collins* v. *Collins,* 1 Ann. Cas. 856, (98 Md. 473,) there is a strong discussion holding that a court of equity will relieve a wife against a voluntary conveyance by the husband of all of his estate, made on the eve of marriage without her knowledge and with the intent of defeating her

marital rights, with a note citing numerous authorities from various jurisdictions, including this State, upholding that rule. According to certain decisions, the mere fact of a voluntary conveyance made on the eve of marriage, without the knowledge of the intended spouse, is conclusive proof of a fraudulent intent on the part of the grantor. In this State, however, it is held that proof of actual fraudulent intent on the part of the grantor is essential, the mere fact of concealment or secrecy not being conclusive of fraud in this respect; that a better rule is that where such voluntary conveyance is made without the knowledge of the other party to the marriage it presents a *prima facie* case of fraud, subject to be explained by the parties interested, and the burden is on the grantee to establish the validity of the deed. *Daniher* v. *Daniher, supra,* and cases cited.

It is argued by counsel for defendants in error that the phrase "eve of marriage" must be construed to be synonymous with the phrase "in contemplation of marriage," and that it cannot reasonably be argued a conveyance made twenty-two months before the marriage was entered into and before there were any negotiations leading up to marriage between the contracting parties was made on the "eve of marriage." We agree, however, with counsel for plaintiff in error that each case as to a transfer before marriage being a fraudulent conveyance must be considered and decided largely in the light of the special facts and circumstances surrounding that case. (*Blankenship* v. *Hall,* 233 Ill. 116.) The phrases "eve of marriage" and "in contemplation of marriage" are used sometimes as synonyms. We find no decision defining the word "eve" as applied to that phrase. The ordinary meaning of the word "eve" is, the evening of the day before another day. The lexicographers also define it as meaning "the period immediately preceding an important event, as 'on the eve of death.'" It is obvious the term "in contemplation of marriage," as used in the decisions, has been given a more elastic and less re-

stricted meaning as to time than would ordinarily be given to the phrase "eve of marriage." We not only have the decisions already cited with reference to the use of the phrase "in contemplation of marriage," in which it is seen that the term is given no rigid meaning as to the exact period of time, but we also have decisions defining the word "contemplation" when used in similar phrases, such as "gifts given in contemplation of death," and this court has said that "a gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death as impending, and in view of that event, is within the language of the statute." (*Rosenthal* v. *People,* 211 Ill. 306; see, also, *In re Estate of Benton,* 14 Ann. Cas. 107; 234 Ill. 366.) In an extended note to this last case numerous authorities are given, in which, in various jurisdictions, the phrase "in contemplation of death" has been construed. In this note it is stated that that phrase does not refer to that general expectation which every mortal entertains, but rather to the apprehension which arises from some existing condition of body or some impending peril,— that is, that the thought of death has taken so firm a hold on the donor's mind as to control and dictate his actions regarding his property and the business is transacted while contemplating death and considering what conditions would arise or exist in the event of death without making the transfer. The word "contemplation" has also been construed in connection with the phrase "contemplation of insolvency," and it has been held that to come within the prohibition of the statute the act must be done with knowledge and because of existing or contemplated insolvency. (2 Words and Phrases, 1488, and cases cited.) Again, it has been held that a payment by an insolvent debtor, in the usual course of his business, to maintain his credit, preserve his estate and carry on his business, without any intent to prefer one creditor to another, is not a payment

"in contemplation of insolvency" and with a design to prefer a creditor. (1 Words and Phrases,—2d series,—947.)

It is obvious from these decisions that the phrase "in contemplation of marriage" cannot be given any fixed and arbitrary meaning as to the length of time within which transfers of property in contemplation of marriage are fraudulent. Beyond doubt, the time of the transfer with reference to the date of the marriage is material in determining whether or not such transfer is fraudulent. It is also material to ascertain the intention of the grantor in making the conveyance in question. Whether it is to provide for his children and not to defraud the wife, and whether the advancement is reasonable when considered with reference to the grantor's property, are questions which must be taken into consideration. (*Jones* v. *Jones, supra; Daniher* v. *Daniher, supra; Clark* v. *Clark,* 183 Ill. 448.) So, also, the question should be considered whether the conveyance was made with the knowledge or consent of the intended spouse: (*Clark* v. *Clark, supra; Daniher* v. *Daniher, supra.*) Under the decisions it seems illogical and unreasonable to lay down a general rule of law that a transfer made eight months or a year before the contemplated marriage would be fraudulent and that a transfer made twenty-two months or two years before the contemplated marriage would not be fraudulent. We do not think any such arbitrary line of demarkation between fraudulent and valid transfers before marriage can be laid down. The law on this question, to be reasonably and fairly enforced, must not only take into consideration the length of time that the transfer is made before the marriage, but the other conditions and facts connected with such transfer. We can conceive of a situation where a transfer might be made in contemplation of marriage before an engagement had been entered into or any negotiations for such an engagement had with any specific individual and yet the transfer would

be held to be fraudulent as against the interests of the one who thereafter married the grantor. Such seems to be the effect of the holdings in *Beechley* v. *Beechley, supra,* and *Higgins* v. *Higgins, supra.* In order to reach a conclusion in this case on the law we must rely entirely upon the allegations of the bill as to the facts. It is not clear from these allegations as to just when the negotiations for marriage or talk of marriage between plaintiff in error and Albert Jarvis began,—whether only a brief time before the marriage, or before or shortly after the date of the conveyance from Jarvis to his son. The bill does allege in terms that this transfer in September, 1913, of the farm from the father to the son was made in contemplation of marriage, without consideration and for the purpose of defrauding his future wife of her marital rights. We cannot say that these broad allegations of the bill,—which, as the case was heard and disposed of on the bill and demurrer, must be conceded to be true,—were not of a nature, under the authorities, to justify a hearing as to the facts connected with the transfer as relating to a fraud upon plaintiff in error. A hearing of the evidence in this case might show clearly either that plaintiff in error was or was not entitled to the relief prayed for in the bill. Giving to the phrase "in contemplation of marriage" a fair meaning as to length of time, having in mind the various authorities construing this phrase, we are of the opinion that the trial court erred in sustaining the demurrer and dismissing the bill for want of equity.

The decree of the circuit court will therefore be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*