(No. 13933.—Decree affirmed.)
MARY JARVIS, Plaintiff in Error, *vs.* WILLIAM F. JARVIS
*et al.* Defendants in Error.

*Opinion filed October 22, 1921.*

DEEDS—*when deed will not be set aside as in fraud of marital
rights.* A bill to set aside a deed on the ground that it was made
in contemplation of marriage and in fraud of the marital rights of
the complainant will be dismissed for want of equity where the
evidence shows that the deed was made two years before the mar-
riage of the complainant and the grantor, that it was made to the
grantor's son to carry out a family settlement long contemplated
by the grantor, and that the grantor never met the complainant
until more than a year after the deed was made.

WRIT OF ERROR to the Circuit Court of Kankakee
county; the Hon. ARTHUR W. DESELM, Judge, presiding.

JOHN S. REYNOLDS, (FRED MORIARTY, of counsel,) for
plaintiff in error.

GRANGER & NOURIE, and MILLER & STREETER, for de-
fendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Plaintiff in error, Mary Jarvis, filed her bill in the cir-
cuit court of Kankakee county asking that a certain deed
conveying real estate formerly owned by her deceased hus-
band be set aside on the ground that it was made in con-
templation of marriage and for the purpose of defrauding
her of her marital rights and praying that she be allowed
dower and homestead in said real estate. The cause was
before us at a former term *(Jarvis* v. *Jarvis,* 286 Ill.
478,) on demurrer to the bill. In the opinion filed at that
time we set out at length the allegations of the bill and
the principles of equity which govern in a case of this char-

acter.   On the former hearing we held that the circuit court
erred in sustaining the demurrer and we remanded the case
for a hearing on the facts.   A hearing was had in open
court before the chancellor, and the chancellor found that
the deed was not made by Albert Jarvis, deceased, in con-
templation of marriage, without consideration and for the
purpose of defrauding his future wife of her marital rights,
but that the deed was made by him for the purpose of car-
rying out in good faith a family settlement, and dismissed
the bill for want of equity.   This writ of error is prose-
cuted to review that decree.

The sole question before us is whether the evidence war-
rants the finding of the chancellor.   The deed in question
was executed and delivered September 16, 1913.   It con-
veyed to a son, William F. Jarvis, 120 acres of land in Kan-
kakee county.   William F. Jarvis agreed to pay to his
father $300 a year as long as he lived and $100 a year to
a feeble-minded sister as long as she lived.   These annui-
ties were secured by trust deeds executed and delivered on
the same day.   These deeds were recorded in the office of
the recorder of deeds of Kankakee county September 17,
1913.   Albert Jarvis had lived on this farm with his wife
and his son William and daughter Rose for a number of
years.   At the time this deed was executed William was
twenty-seven years of age.   The first wife of Albert Jarvis
died of injuries from burns early in July, 1913.   He mar-
ried plaintiff in error July 18, 1915.   They lived together
until February, 1916.   After the separation he made his
home with his son William until his death, February 1,
1917.

Plaintiff in error testified that she was introduced to
Albert Jarvis by his first wife about a year before her
death; that she met Jarvis on the streets of Kankakee late
in July, 1913, and that she talked with him about the
tragic death of Mrs. Jarvis and that he wept and told her
that he was very lonesome; that she again met him in Kan-

kakee early in August and that he asked her to marry him; that she told him she would consider it and give him her answer later; that she again met him in the latter part of August, 1913, and that he again proposed marriage to her; that she accepted and that they at that time fixed the date of the marriage for May, 1915. She further testified that they met at different places in Kankakee from time to time during the next two years, and that he frequently told her he was the owner of the 120-acre farm on which he resided and would provide her a good home and had plenty of means to take good care of her.

Defendants in error contend that plaintiff in error met their father for the first time in the home of a fortune-teller in June, 1915, about a month before her marriage to him. Mamie Lane, a young woman employed by the fortune-teller, testified that plaintiff in error came there shortly before she met Jarvis and engaged the services of the fortune-teller to find her a husband; that she was introduced to one prospect but that she did not like him because he was a drunkard and had no money; that later on she met Jarvis at the home of the fortune-teller by arrangement and was there introduced to him. Defendants in error corroborate their contention that their father did not meet plaintiff in error until June, 1915, by proving that he went to town irregularly until January, 1915; that about that time he began to go to town often and to be called up over the telephone by women; that in February, 1915, he was engaged to marry a woman by the name of Boule, for whom he fitted up rooms and who got his watch and $700 in money and then ran off with another man.

Plaintiff in error admits that she met Jarvis at the home of the fortune-teller in June, 1915, and that she was introduced to him there. She claims that the meeting was by accident, and that when they were introduced she failed to protest that they were already acquainted because of a warning from Jarvis that it was none of the fortune-teller's

business to know their affairs. At the time of their marriage plaintiff in error was forty-eight years old and Jarvis was seventy-two. She was previously married in 1885 to Joe Arris. She was the mother of eight children and had been divorced from her former husband eleven years prior to her marriage to Jarvis. William Jarvis had spent his life on his father's farm. In 1910 his father made a will, in which he gave to William the farm in question on the same terms and conditions mentioned in the deed. The farm was poorly drained and William wanted his father to tile it for him. The father told him that the farm was to be his and that he could go ahead and tile it. William refused to spend any money on the land unless the farm was deeded to him. The father consulted with other members of his family and it was agreed that the deed should be executed.

We have examined the evidence and agree fully with the findings of the chancellor. The story of plaintiff in error is unreasonable in many respects. In the first place, it is unreasonable that they would have postponed the marriage more than two years after the engagement, which she claims took place after three casual conversations on the street. In the second place, she was not able to produce a single witness who saw her in the company of Jarvis prior to June, 1915; and in the third place, her explanation of the occurrence that took place at the home of the fortune-teller is unnatural and entirely unsatisfactory. On the other hand, the evidence clearly shows that the deed was executed for the purpose of carrying out a family settlement which had been long before determined upon by the father. In view of the evidence in this record the chancellor could not reasonably have come to any other conclusion than the one he reached. He properly dismissed the bill for want of equity.

The decree of the circuit court is affirmed.

*Decree affirmed.*