ELLA VAN HUFF, ELLA V. DOBBS and CARRIE R. CLARK and MARY O'RIELLY, Executrix of Estate of ELLA M. STEVENSON, v. ALICE WAGNER, Appellant.

Division One, October 11, 1926.

1. **CONVEYANCE: Delivery.** Whether a deed purporting to convey a present interest in lands was in fact delivered is an inference to be drawn from the facts in judgment in each particular case, and is not to be worked out by fixed or arbitrary rules.

2. ———: ———: **Parting with Dominion over Deed: Depositary.** To constitute delivery there must be a time when the grantor parts with dominion over the deed. So long as the deed is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and there is no delivery; and if the grantor dies without parting with his control over it, it has not been delivered during his lifetime, and after his death no one has power to deliver it, and if then delivered by the depositary it conveys no title. To constitute delivery by a depositary, after the grantor's death, the depositary must have had a dominion and control over the deed during the life of the grantor with which the grantor could not interfere.

3. ———: **Delivery to Depositary: Oral Instructions: Trustee of Express Trust: Continued Control.** Delivery of a deed by the maker to a third person for delivery to the grantee after the grantor's death is sufficient delivery, if the grantor releases his dominion over the instrument and at the time intends to divest himself of the title and of all further control of the deed; but where the aged owner of a home, which she continued to occupy until her death, delivered a sealed envelope to a mail carrier, and instructed him to take care of it and let no one have it, and stated that it was a letter and that when she had passed away to open the letter and it would tell him what to do, and the envelope bore no memorandum indicating the nature of its contents, and she did not tell him it contained a deed, and after her death it was opened, and contained no letter or other instructions, but did contain a voluntary warranty deed, which was then delivered by the mail carrier to the grantee, it is **Held,** from these and other facts and circumstances in the record, that the maker did not intend that the deed should become operative during her life, and that the delivery to the mail carrier did not give to the grantee a present fixed right of future enjoyment.

Corpus Juris-Cyc. References: **Deeds,** 18 C. J., Section 95, p. 198, n. 23, 24; Section 114, p. 208, n. 27; p. 209, n. 28; Section 115, p. 211, n. 37.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*Jackson C. Stanton* and *James I. Wagner* for appellant.

(1) Defendant's request for an instruction in the nature of a demurrer to the evidence should have been sustained and the petition dismissed at the conclusion of plaintiff's testimony, because: (a) There was an entire failure of proof. The evidence must conform to the pleadings. Duncan v. Gage, 250 S. W. 648; Hensler v. Stix, 113 Mo. App. 162; Ingwerson v. Ry. Co., 116 Mo. App. 139. (b) The burden of proof rests on plaintiffs. Williams v. Modern Woodmen, 204 Mo. App. 135; Griffith v. Cas. Co., 253 S. W. 1043; Downs v. Horton, 287 Mo. App. 414. (c) Before a deed can be abrogated by equity the proof of non-delivery must be cogent and clear. Burkey v. Burkey, 175 S. W. 625. (2) The court erred in its finding of fact and conclusion of law on the issue raised by the pleadings and by rendering judgment on facts neither pleaded, admitted, nor proven. Even a superficial reading of the "Memorandum" written by the learned judge of the trial court and filed in this cause will support this assignment of error for the reason that the very first paragraph of said "memorandum" contains this language, "and afterwards placed the deed in an envelope, also enclosing in the same envelope a written memorandum directing the witness Biggs, after her death, to deliver the deed to Mrs. Wagner", a statement which can nowhere be found in this record; and for the further reason that this controversy is concerning real estate and not personal property. (3) Evidence concerning the nature and kind of business transacted for deceased by witness Biggs should have been admitted, though there is enough in the record to show that these services were menial and mechanical. Under the facts in this case the depositary became a trustee of the grantee, and not an agent of the grantor. In any event where the deposit of the deed is made unconditionally, the depositary becomes not an agent, but a trustee of an express trust. Tillman v. Carthage, 247 S. W. 997; Meredith v. Meredith, 287 Mo. 250. (4) Evidence of the surrounding facts and circumstances is admissible as bearing upon a contested question as to delivery. 18 C. J. 431, sec. 524; Schooler v. Schooler, 258 Mo. 83; Cook v. Newby, 213 Mo. 491. (5) The court was in error in holding that the deed to the property in controversy "was never legally delivered to defendant, or to anyone for her." Such a thought might be entertained were it not for the fact that there were two separate and distinct deliveries, if such a thing is possible in law.

*John G. Paxton* for respondents.

(1) There was no legal delivery of the deed to the defendant grantee, because said deed was never placed beyond the control or possession of grantor. The undisputed evidence is that there was given to Biggs, a postman, a sealed envelope the contents of which he did not know. He was told to keep this envelope safely, ''Don't let anyone get that,'' and upon the death of Mrs. Stevenson to open the envelope and it would tell him what to do. Overlooking the fact that the deed did not tell him what to do, it cannot be questioned that Biggs would have been under a legal obligation to return the envelope to Mrs. Stevenson had she demanded it. He was the custodian for safe-keeping only as far as he knew from any directions he had from her. To constitute delivery the deed must be placed beyond the control of the grantor. Huey v. Huey. 65 Mo. 289; Mudd v. Dillon, 166 Mo. 110; Peters v. Berkemeier, 184 Mo. 393; Bunn v. Stuart, 183 Mo. 375; Terry v. Glover, 235 Mo. 544; Coles v. Belford, 289 Mo. 97; Harrison v. Edmonston, 248 S. W. 588. (2) To constitute a valid delivery the grantor must have intended to part with the title to the property at the time of the delivery of the deed to Biggs. If to take effect after her death, then it was a will improperly executed and did not convey title. The property conveyed by the deed was the home of the deceased at that time. She resided therein. Possession was not given to the grantee, nor was it intended to be given until after the death of Mrs. Stevenson. So she stated to the witness, Miss Compton. Coles v. Belford, 289 Mo. 97; Harrison v. Edmonston, 248 S. W. 588. (3) There was no legal delivery of the deed. The envelope when opened contained no directions as to what Biggs should do with the deed. He had only the deed itself. His directions were to do what the contents of the envelope told him. Delivery is an essential part necessary to the making of a valid deed. Biggs found the deed in his possession after the death of Mrs. Stevenson without directions. There is no necessary inference that he should deliver the deed to the grantee. Obviously he did not know what to do. He consulted Buchanan, the abstractor, and followed his advice. To make the delivery to a stranger effectual, the intention with which the delivery is made must be expressed at the time. Tiedeman on Real Property, sec. 578; Osborne v. Eslinger, 155 Ind. 351; Fitzpatrick v. Brigman, 30 So. (Ala.) 500; Mudd v. Dillon, 166 Mo. 110.

LINDSAY, C.—This is a suit to cancel a deed executed to defendant by Ella M. Stevenson as being a cloud upon the title to real estate claimed to be owned by the three plaintiff's first above named, as residuary legatees under the will of said Ella M. Stevenson, deceased. The deed was executed on July 5, 1923. Mrs. Stevenson's age was

eighty-two years, and the property in question was her residence, and it was so occupied by her until her death, which occurred November 3, 1923. She left no direct heirs. On August 27, 1922, she made a will, in which, after legacies to different Christian Science churches, and to certain relatives, she devised the remainder of her real estate to her nieces, the plaintiffs, Ella Van Huff and Ella V. Dobbs. Thereafter, on May 22, 1923, by a codicil, she provided that said remainder should go to the nieces just named, and to Carrie R. Clark, also a niece. On June 5, 1923, at her request, the deed in question, a warranty deed for the expressed consideration of one dollar, was drawn by Jas. F. Buchanan, an abstractor of titles of Independence, but no grantee was named therein at that time. On July 5, 1923, Mr. Buchanan was called by Mrs. Stevenson to take her acknowledgment to said deed, and refused to do so until the name of the grantee should be expressed therein. Thereupon, she wrote in the name of defendant as grantee, and signed and acknowledged the deed. She placed the deed in an envelope, which bore the return address of Mr. Buchanan, and retained possession of the same. Later, Buchanan said, she asked him if he thought the disposition she had made of her property was all right, and he said it was, but he does not say that Mrs. Stevenson told him what she had done with the deed.

The plaintiff waived any question of the competency of defendant as a witness. She testified that she was a Christian Science practitioner, and in that capacity has visited and treated the deceased from about April, 1923, and that on October 7, 1923, at the request of Mrs. Stevenson, she went to the latter's home, and that after some conversation and a prayer, Mrs. Stevenson got out an envelope and took therefrom the deed in question and said to defendant: "I deeded you this property," and threw the envelope over on defendant's lap. The defendant further testified: "I turned it over and threw it back into her lap. I said: 'It is not mine. I have not earned this property. You keep this little home. You are going to get well.' She spoke of this plaintiff, Ella Van Huff, and said: 'I don't want her to have it. I want it to go where it will do the most good.' 'Well,' I said 'I haven't earned it.' 'But,' she says, 'I want you to have it.'" She said that after she threw it back into Mrs. Stevenson's lap, the latter put the deed in the envelope and put the envelope back into the drawer. Defendant testified that the next time she heard about the deed was on the afternoon of October 9th, when she again visited Mrs. Stevenson at the latter's request; that upon that occasion a Mrs. Holland, a neighbor, was present; that Mrs. Stevenson asked if defendant had told Mrs. Holland what she (Mrs. Stevenson) had done; that defendant said she had not told Mrs. Holland; that thereupon Mrs. Stevenson said: "Mrs. Holland, I have deeded this place to Mrs. Wagner, and have given the deed to Mr. Biggs to keep until I pass

away. I want you, Mrs. Holland, to see that she gets it when I pass away, and that my wishes are carried out.'' Defendant, in her testimony as to what was then said, adds the statement: ''I said I would accept it.'' Mrs. Holland's testimony contains no reference to a statement by defendant that she accepted the deed. On the cross-examination of defendant there is the following:

''Q. After you told Mrs. Stevenson you would accept the deed what did she do with it? A. Took it and put it in the envelope and put the envelope in the bureau drawer where she had it.

''Q. Then later she told you and Mrs. Holland? A. Yes.

''Q. And that she had given the deed to Mr. Biggs to keep for her until she had passed away? A. And for Mrs. Holland to see that I had the deed.

''Q. This all took place when? A. On the 9th.''

Mr. Biggs, above mentioned, was called as a witness by the plaintiffs. He was the mail carrier on the route upon which Mrs. Stevenson lived. He had been such for a number of years, and they were on friendly terms. He testified that one morning, three or four weeks before the death of Mrs. Stevenson, she called him into her house; that she asked him to get an envelope out of the bureau drawer, which he did, and it was an envelope bearing the return address of Buchanan; that after looking at it, and saying it was the one she wanted, Mrs. Stevenson handed it back to him, with her instructions. Mr. Biggs states it thus: ''She handed it back to me with instructions to take care of it and let no one have it, and I said: 'I will.' She says: 'What will you do with it,' I said: 'I will put it with my papers and lock it up.' She said: 'All right,' and I sat there two or three minutes. She said: 'Don't let anyone get that,' and I said: 'I won't, Mrs. Stevenson, I will take care of it and if it is disturbed they will have to blow the safe to get it.' So I took the envelope and left. ' The witness further testified:

''Q. What did she tell you about it. A. She didn't tell me. She said it was a letter and to take care of it, and when she passed away, to open that letter, and it would tell me what to do.'' The witness said he had no further talk with Mrs. Stevenson upon that subject, and that the envelope was sealed when given to him; that it had written upon it the word, ''Personal,'' and that it was not opened by him until after the death of Mrs. Stevenson. He said that on November 3rd, after being called over the telephone, by Mrs. Holland, he thought, and inquired of as to the envelope after Mrs. Stevenson's death, and on that day, he went to the office of Buchanan, and told him he had an envelope, left to him by Mrs. Stevenson, marked ''Personal;'' that he opened the envelope in the presence of Mr. Buchanan; that it contained the deed, and nothing else, and Mr. Buchanan told him ''to deliver it to the parties it was addressed to.''

Mr. Buchanan did not testify in person, and an agreed statement of what he would testify to was read. It contained no reference to any instruction given him by Mrs. Stevenson as to delivery of the deed.

Biggs said he (Biggs) told Mrs. Wagner to have the deed recorded. It was filed for record that day.

The grantee in the body of the deed, as written by the deceased, was described as "Mrs. Alice Wagner, Bristol Sta." On the back of the deed there was reference to the office of J. E. Buchanan, as notary, etc., and below indorsed the notation: "Alice Wagner, R. F. D. 6, Box 338, Independence, Mo." The deed was in the ordinary form of a warranty deed, but the covenant to defend the title closed with the words "except taxes for 1923 and thereafter."

In addition to the testimony of the defendant, there was other testimony as to the statement by Mrs. Stevenson that she had deeded the property to the defendant, or, that "Mrs. Wagner is going to get this place." Mrs. Holland testified that Mrs. Stevenson said she had given the deed to Biggs to take care of. Testimony offered to show that Mrs. Stevenson was not on good terms with plaintiffs, or some of them, was excluded. Miss Compton, a witness for defendant, who testified that she told Mrs. Stevenson to keep hold of her home, was permitted to testify that her reply was "that they will never get my home from me." But the time of that conversation was not definitely fixed. No contention is made that the act of Mrs. Stevenson was the result of mental weakness, or the exercise upon her by defendant of an undue influence. Mrs. Wagner, it appears, had been paid for the treatment or services rendered by her to Mrs. Stevenson.

In cases of this character, whether or not there has been a delivery, that is, a delivery conveying a present interest, is to be determined upon the facts peculiar to each case. "Delivery is not controlled by **Delivery.** any fixed or arbitrary rule, but must be worked out with reference to all facts in judgment." [Chambers v. Chambers, 227 Mo. l. c. 282.] In Huey v. Huey, 65 Mo. l. c. 694, there is a statement of the rule which is pertinent to the issue in the case at bar: "In the case of Cook v. Brown, 34 N. H. 460-476, it was said: 'There must be a time when the grantor parts with his dominion over the deed, else it can never have been delivered. So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none; and if the grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it. The depositary must have had such a dominion over the deed during the lifetime of the grantor, as the latter could not interfere with, in order to have any control over it after his decease.' These, and other authorities to the same effect, which it is unnecessary to cite, concur in declaring that the only in-

fallible test of a delivery is the fact that the grantor has divested himself of all dominion and control over the conveyance.''

Counsel for defendant contend that there is nothing in this record on which can be predicated the idea that this deed was intended to take effect upon, and not before, the death of the grantor, and insist that its delivery to Mr. Biggs gave to the grantee a present fixed right of future enjoyment. The rule applicable in cases of delivery of a deed to a third person and delivery by the third person to the grantee, after the grantor's death is stated in Sneathen v. Sneathen, 104 Mo. 1. c. 209, as follows: ''Delivery of a deed is, of course, an essential element of a valid transfer of title to real estate, and it must take place during the life of the grantor; for a deed cannot be made to perform the functions of a will. But the delivery need not be to the grantee in person. A deed delivered by the grantor to a third person to be delivered to the grantee, and by such third person delivered to the grantee, will constitute a good delivery, though the grantor is dead at the date of the last delivery; for the delivery takes effect by relation as of the date when first made to the third person. In such cases it should appear that the grantor parted with all dominion and control over the instrument, intending it to take effect and pass the title as a present transfer. This intention may be manifested by acts, or by words, or by both words and acts.''

Counsel have extensively briefed the question, citing many rulings, based upon what was held to constitute delivery, stating the circumstances considered in determining the intent of the grantor, and under which the instrument was delivered to the depositary or third person, and, rulings as well, upon various questions related to these. Detailed mention of all the cases cited need not be made here. The vital question in this case is whether Mrs. Stevenson intended to relinquish all right of control over the instrument, when she handed it to Biggs. Did she, without reservation, deliver it to him as a trustee for the defendant, intending then to pass the title, with the passing of the deed to Biggs?

We refer to some of the cases cited by counsel upon the claim that the deposit of the deed with Biggs made him trustee of an express trust.

Tillman v. Carthage, 297 Mo. 74, was a case in Court en Banc wherein the deed was deposited by the grantor. In that case, as in this, the grantor had theretofore executed a will making disposition of the lands in controversy. The will had provided for the giving of the lands to the city of Carthage for a specific purpose. The deeds, subsequently made to the city, contained reference to the provisions of the will in respect to the purpose to which the property was to be devoted, under the terms of the will. There, the deeds were placed in a sealed envelope, upon which there was the written endorsement signed by the grantor stating that the deeds were delivered to the

depositary "for the purpose of safe-keeping the same," followed by the direction that upon the demise of the grantor the depositary was to deliver the said deeds to the city. They were held to be not testamentary upon their faces, nor testamentary in fact for want of delivery. In support of the contention that they were not testamentary in fact for want of delivery, evidence was admitted to show declarations by the grantor of her purpose in making the deeds, and to show the instructions received by her at the time from her attorneys in order that the provisions theretofore made in the will would be safeguarded by the execution of the deeds, in such a way, that not even her own act thereafter would prevent the desired purpose being carried out. It was held in that case that this testimony was unnecessary to show the character of the delivery, and that the language of the endorsement upon the envelope was of itself sufficient. In that case the deeds were held to fix presently the rights, which, under the will, would have been revocable. In this case the deed, if effective, would do the opposite, that is, revoke the terms of the will touching this property, would cut out the beneficiaries named in the will, and substitute another as to the property conveyed by the deed.

In Meredith v. Meredith, 287 Mo. 250, the deed was delivered to a bank with written instructions stating it was "to be held in trust and for safe-keeping," and at the death of the grantor, to be delivered to the grantee. Other declarations of the grantor appear to have been admitted in evidence and, while referred to in the opinion, are not set out. It was held the bank was trustee of an express trust and the acceptance of the deed by the grantee related back to the delivery to the bank.

In Seibel v. Higham, 216 Mo. 121, another case cited by counsel, the deed was one delivered in escrow, and its ultimate delivery to the grantee was made to depend upon performance by him of certain conditions. In that respect the case is distinguished from the one at bar.

In Cook v. Newby, 213 Mo. 471, the deed was deposited. There was with it a memorandum showing that the deed was to be held by the third party during the lifetime of the grantors, and at their death he should have it recorded and delivered to the grantees. In that memorandum the grantors declared that they relinquished all right and title, except possession and use during their lifetime.

In Williams v. Latham, 113 Mo. 165, the deeds were deposited without written instructions, but with clear oral instructions in accordance with the advice given the grantors by their attorney. Those deeds also reserved a life estate to the grantors. In that case, it was specifically understood at the time of the deposit of the deeds that they were withdrawn from the custody of the grantors, and exclusively in possession of the third party.

In Schooler v. Schooler, 258 Mo. 83, the deeds were delivered by the grantor to the cashier of a bank. They were in sealed envelopes upon which was written a statement, showing the fact of the conveyances, and the parties to whom they were to be delivered. It was shown also that the grantor at the time of the execution of those deeds was advised that to be effective they must be delivered to the grantees, or placed in the hands of a third party and such third party be notified that the grantor had no further control over them, and that they were the deeds of the grantees. In that case the cashier of the bank to whom they were delivered could remember nothing of what was said to him by the grantors in the way of oral instruction, but it was shown that the grantor immediately thereafter had put the grantees in possession of their respective lands.

In Terry v. Glover, 235 Mo. 544, the deed provided that it should not be in effect until the death of the grantor. It was held to be testamentary in character.

The cases establish beyond question that delivery of the deed to a third person for delivery to the grantee after the grantor's death is valid provided the grantor releases his dominion over the instrument. He must intend to divest himself of title and control at the time.

In Coles v. Belford, 289 Mo. 97, the deed in question was given by the grantor to one of the grantees, with instructions that the grantee put it in her box and keep it, and whenever anything happened to the grantor—when she died—to send the deed to Springfield for record. It was held that there was not such a delivery of the deed as passed a present interest, and that it was testamentary in character.

In Tiedeman on Real Property, section 578, it is said: "And although the law presumes that a delivery of a deed to the grantee personally is done with the intention of passing the title, there is no such presumption indulged in when the deed is handed to a stranger. To make the delivery to a stranger effectual, the intention with which the delivery was made must be expressed at the time."

In this case the maker of the deed gave no written instructions. She delivered to Mr. Biggs a sealed envelope which bore no memorandum indicating the nature of the contents, and she did not tell him it was a deed. But, she did tell him it was a letter. The oral instructions given to him was that he should take care of it and let no one have it, and when she passed away, open that letter, and it would tell him what to do. There was, in fact, no letter telling him what to do, but the conclusion from the reference made by her to a letter telling him what to do after she passed away, is, that the instruction therein hypothesized was to be effective after death. Without regard to the question whether Mrs. Stevenson had prepared such a letter, and thought she had enclosed it in the envelope, and conceding that she knew the deed was enclosed in the envelope, we have reached the

conclusion from the character of the conversation between her and Mr. Biggs as detailed by him, and from all the other circumstances in the case, that she intended the deed should not be operative until her death. Under that view, the delivery of the deed by Mr. Biggs to the defendant after the death of Mrs. Stevenson could avail nothing.

There is in the brief for defendants, the suggestion that they should have been permitted to show the nature and kind of business transacted for Mrs. Stevenson by Mr. Biggs. Nevertheless, it is said by counsel, by way of concession, that there is enough in the record to show that his services were menial and mechanical. The testimony of Biggs himself, and the statement of Mr. Buchanan, showed that the latter was the man who transacted the business of Mrs. Stevenson. There is also a reference in the briefs to the fact that in the memorandum filed by the trial court as set out in the abstract, there is the erroneous statement, as of fact, that there was a written memorandum in the envelope delivered to Biggs. There is in the brief of counsel for plaintiffs the statement that this was an error in the original memorandum, which was corrected by the court, but that through an oversight an original and not a corrected copy, of such memorandum was used in making up the record. Be that at is may, we do not regard it as affecting in any way the issue here for determination, or the correctness of the conclusion reached by the court.

It is further suggested as to the memorandum filed by the court that the authorities cited therein have reference to the question of delivery of gifts *causa mortis,* and that such authorities are pertinent only where the subject of the gift is personal property. As to this, also, it must be said that the suggestion is without weight so far as concerns the question of the correctness of the ultimate action taken by the trial court. The conclusion of the trial court was that the deed in the possession of Mr. Biggs was in his possession as the agent of Mrs. Stevenson, and did not constitute a delivery presently in effect.

We are of the opinion under all the evidence that the deed here involved and delivered to Mr. Biggs was testamentary in character, and under that view the judgment of the trial court should be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.