BIRDIE LOWER NOE, Appellant, v. ROBERT NOE, Respondent, No. 41320—224 S. W. (2d) 77.

Division Two, November 14, 1949.

*Barry & Barry* and *O. E. Shultz* for appellant.

*J. V. Gaddy* for respondent.

BARRETT, C.—This is a suit by a widow, Birdie Lower Noe, to cancel the deed of her deceased husband, Clinton A. Noe, to his son, Robert E. Noe. The theory of her action and of this appeal is that (a) the deed was not delivered and therefore never became effective as a conveyance (Van Huff v. Wagner, 315 Mo. 917, 287 S. W. 1038) and (b), if it was delivered, that it was an antenuptial conveyance executed in fraud of her marital rights and should therefore be canceled. 41 C. J. S., Sec. 20 (b), p. 419; 26 Am. Jur., Sec. 185. p. 806.

When the plaintiff and Mr. Noe were married, on the 8th day of March 1944, she was sixty-four and he was eighty-four. She had not been married previously. He had eight children by two former marriages. She operated a boarding house in the property she owned at 721 North 10th Street in St. Joseph and in November 1943 Mr. Noe, a pensioned mail carrier, became one of her boarders. They lived in her property, after the marriage, until sometime in 1945 when they moved to the property involved in this controversy, 2002 Savannah Street, St. Joseph. He died March 16, 1947 and the plaintiff continued living in the property until she was evicted by the son.

Mr. Noe executed the deed on the 14th of April 1941 and left it with his lawyer, Mr. J. Harry Latham, in Savannah, Missouri, with instructions to deliver it to his son, Robert, upon the death of the grantor. Upon the trial of the case it was stipulated "that the deed was executed in 1941 and the marriage to the plaintiff was not consummated until 1944, and at the time the deed was executed, there was no contemplation of marriage between the now deceased grantor and the present plaintiff" and so, plainly, this was not a conveyance "on the eve" of the grantor's marriage. Vordick v. Kirsch, (Mo.) 216 S. W. 519; annotation 103 A. S. R. 418. It is assumed, as the appellant argues, that an antenuptial conveyance may be in fraud of marital rights and set aside even though "the particular person whom he was to marry had or had not been selected." Jarvis v. Jarvis, 286 Ill. 478, 122 N. E. 121; annotation 48 L. R. A. (N.S.) 512, 518. However, the conveyance must have been made with the intention of defeating marital rights. 26 Am. Jur., Secs. 189-190, p. 809; Jarvis v. Jarvis, 299 Ill. 89, 132 N. E. 432. The time of the conveyance is not determinative but it is one of the factors to be considered (41 C. J. S., Sec. 20(b), p. 420) and in this instance the fact that the deed was executed almost three years prior to the marriage and more than two years before the grantor contemplated marriage is a circumstance which weighs against the appellant's claim that the conveyance was in fraud of her marital rights. The fact that the conveyance was voluntary is to be considered (Deke v. Huenkemeier, 289 Ill. 148, 124 N. E. 381) but it is not determinative (Bozarth v. Bozarth, 399 Ill. 259, 77 N. E. (2) 658) even though it is a circumstance favorable to the appellant's claim. When Mr. Noe executed the deed he told his lawyer "that Bob had been very good to him and that he had taken care of the other kids * * * that if any of the other children said anything about it just to simply tell them that he had provided for them before and that is why he wanted to leave that deed there for Bob." The explanation repels, at least in a part, the unfavorable inference drawn from the voluntarity of the transfer, even though this property may have constituted the bulk of the grantor's estate. 26 Am. Jur., Sec. 191, p. 811; Donaldson v. Donaldson, 249 Mo. 228, 239, 155 S. W. 791.

The appellant testified and claims that she thought Mr. Noe owned the property. He said that he owned it and her friends and relatives said that he had told them that it belonged to him and "that it belonged to Birdie until her death if anything * * * happened to him." After they moved into the property they paid the taxes and insurance and in January 1946 signed a contract, as owners of the property, for the installation of a furnace. Despite her testimony and these conversations Mrs. Noe learned, before her husband's death, that he did not own·the property. Kinne v. ·Webb, 54 Fed. 34, 37. In ▮ July 1946 she wrote a letter to the respondent, Robert. In part, she said: "Dear Bob and Family. I wish I could talk with you again. I have a plan that will help to straighten things out. You told me the place was deeded to three of you. Your father says it is to you only. So I think we should know just how things are. What about the other boys. I can do a great deal with your father and I wish you all could share alike." So, apparently, there was no active deception or representation by Mr. Noe as to the property he owned and Mrs. Noe's marriage was not in reliance upon his representations or the fact that he owned the property. Compare: Hach v. Rollins, 158 Mo. 182, 59 S. W. 232. She may not have been aware of the conveyance at the time of the marriage, and likewise there is no evidence that Robert was then aware of it, but the transfer was not secretively and surreptitiously made, as in Rice v. Waddill, 169 ·Mo. 99, 67 S. W. 605, even though it may not have been mentioned or disclosed prior to the marriage. 26 Am. Jur., Sec. 190, p. 809. In brief when all the facts and circumstances are considered and all the conflicting inferences are weighed they negative rather than establish that the transfer was in fraud of or made with the intention of defeating her marital rights. 41 C. J. S., Sec. 20(b), p. 419; annotation 48 L. R. A. (N. S.), 1. c. 513.

▮ These were the circumstances in which the deed was executed: Mr. Noe was well acquainted with Mr. Latham and had been in his office many times. He had previously left his will with Mr. Latham although it had been drawn by another lawyer.· Mr. Noe acquired the property in St. Joseph in 1931. In April 1941 he called at Mr. Latham's office in Savannah and requested him to draw the deed. The deed is a general warranty deed to Robert Noe in which "Grantor reserves to himself a life estate in the above entitled real estate." Mr. Latham testified that he drew the deed as instructed, that Mr. Noe executed it and then returned it to him (Mr. Latham) with instructions to keep it and deliver it to Robert upon his death. Mr. Latham gave the deed to his secretary and she placed it in an envelope and, after making a notation upon the envelope, placed the deed and the will in the "escrow box," a long, green fireproof box. When Mr. Noe died Mr. Latham was in a hospital and his secretary called another lawyer, Mr. J. W. Roberts, when the Noe children came to

Mr. Latham's office. She took the will and the sealed envelope containing the deed from "a jacket" in the escrow box and handed them to Mr. Roberts. Mr. Roberts testified that "there was an escrow memorandum on that envelope. * * * The substance was that that deed was to be held by Mr. J. Harry Latham in escrow until the death of Mr. Noe and then delivered to the grantee in the deed." He stated that he read the will to the children and then delivered the deed to Robert. The original envelope was not available because Robert left it with the recorder when he recorded the deed and it was not returned to him. In these circumstances Mr. Noe did not reserve any dominion or control over the deed but unconditionally delivered it, intending it to be a legally operative and binding instrument—a completely executed and delivered deed. Potts v. Patterson, 355 Mo. 154, 195 S. W. (2) 454; Blackiston v. Russell, 328 Mo. 1164, 44 S. W. (2) 22; Donaldson v. Donaldson, 249 Mo. 228, 155 S. W. 791; 43 Univ. Mo. Bull., p. 5. The fact that the grantor reserved a life estate is a further indication that he intended to convey a present interest in the land. Annotation 54 L. R. A. 865, 884. The appellant contends that the trial court should have permitted Mr. Latham to answer this question: "Assuming that he (grantor) had called at your office and asked you for those papers would you have delivered them to him?" It is not known what his answer would have been but subsequently Mr. Latham testified that Mr. Noe talked to him several times and did not attempt to withdraw any of the papers. In addition he said that Mr. Noe called him just before he died and admonished him to follow his previous instructions. All the circumstances considered, there is no evidence supporting the inference that the deed was ██ not delivered. 16 Am. Jur., Secs. 142-147, pp. 516-521; annotations 52 A. L. R. 1222; 54 L. R. A. 865.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.