**Naomi CAPLINGER, Plaintiff-Appellant,**

**v.**

**Arnold CAPLINGER, Mabel Kerby, Valemus Caplinger, Neal Caplinger, Louise Caplinger, Donnie Caplinger, Karolin Caplinger, Lexa Kimbrough and Luella Fitty, Defendants-Respondents.**

**No. 53509.**

Supreme Court of Missouri, Division No. 2.

March 10, 1969.

Esco V. Kell, West Plains, for appellant.

Moore & Brill, Richard D. Moore, Newton C. Brill, West Plains, for respondents.

LAURANCE M. HYDE, Special Commissioner.

Action to set aside a deed, made by plaintiff's deceased husband, alleged to be in fraud of plaintiff's marital rights. The court found for defendants and plaintiff has appealed. We affirm.

Defendants Arnold Caplinger and Mabel Kerby are children of plaintiff's deceased husband I. D. Caplinger and defendant Valemus Caplinger is the wife of James Caplinger, a deceased son of plaintiff's deceased husband. Other defendants are the children of James and Valemus. I. D. Caplinger died October 26, 1964. James Caplinger died July 25, 1964.

The court made findings of fact, which we find to be supported by substantial evidence. From these findings and the documents in evidence the following facts appear.

The first wife of I. D. Caplinger (whom he married in 1903) died August 10, 1957; and he married plaintiff March 22, 1959. I. D. Caplinger owned the land involved, a 320-acre farm and lived on it with his first wife. Soon after her death, he went with his son James and wife Valemus on September 3, 1957 to the office of H. D. Green, an attorney, in West Plains and informed him that he, I. D. Caplinger, wanted to sell his farm. Green prepared a sales agreement for sale of the farm, with the livestock, farming equipment, grain and hay on it, to James and Valemus, reciting that I. D. Caplinger "has this day sold to Second Party and Second Party has purchased from First Party" the farm and personalty for $10,330.00. On that date, in Green's office, James gave I. D. Caplinger checks for $2330.00 and signed a note for $7000.00 for the balance of the purchase price. The sales agreement recited that as a part of the purchase price "First Party has this day advanced to Second Party the sum of $1000.00 as an advancement on Second Party's share of the estate of First Party." The contract and note provided for annual principal payments of $1000.00, with interest from maturity. There was evidence that some of these payments were to be made to the children of I. D. Caplinger as advancements from his estate. There was only a general location description of the land in the contract but Green sent the parties to A. W. Landis, an attorney and abstractor, to get the legal description and prepare the deed. No trust deed was prepared to secure the $7000.00 note, which, however, was paid in full before this suit was commenced, $5000.00 before I. D. Caplinger died.

The deed was left with Landis who brought the abstracts up to date and he retained them until July 1961 when they were pcked up and paid for by Arnold Caplinger. The deed left with Landis was recorded August 16, 1961. The land was assessed to I. D. Caplinger 1958 through 1961. It was changed and assessed to James Caplinger in 1962 but James paid the taxes from 1959 through 1962. Plaintiff did not know of the sales contract until after the death of I. D. Caplinger but said he told her "about the occasion of turning the deed over to Jim." Plaintiff and I. D. Caplinger lived part of the time on the farm and part of the time in West Plains in house purchased by I. D. Caplinger after they were married; but "after he

turned the deed over to Jim he didn't go so much" to the farm.

The court's findings were that there was no delivery of the deed before the marriage of I. D. Caplinger and plaintiff; that the grantor's intent was that the deed was not to be delivered until the buyers paid more on the purchase price (four $1000.00 installments had been paid when it was recorded); and that I. D. Caplinger did not conspire with his children and Valemus to convey the farm to defraud plaintiff of her marital rights in it.

The court's view was that, since the deed was not delivered prior to the marriage, under Section 474.150(2) the conveyance would be deemed to be in fraud of plaintiff's marital rights unless the contrary was shown and that defendants had the burden of disproving such fraud. However, the court found there was no fraud on the following basis: "If the deed is specifically made to follow out a bona fide transaction unrelated to any scheme to defraud the wife of her marital rights, the statute is not applicable even though the ultimate result is to deprive the spouse of her marital rights which she would have had if the conveyance had not been made. * * * The court considers the transaction between decedent, as seller, and Jim and Valemas, as buyers, to be a bona fide transaction not in pursuit of any scheme to defraud plaintiff."

Section 474.150(2) provides: "Any conveyance of real estate made by a married person at any time without the joinder or other written express assent of his spouse, made at any time, duly acknowledged, is deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse, unless the contrary is shown."

Plaintiff says the sales agreement did not mention a deed, fixed no definite time for delivery of a deed or for escrow or for giving possession, and contained no description of the land and claims it could not have been a bona fide transaction.

However, there was evidence believed by the court that a substantial part of the purchase price was paid at the time the contract was signed, there was a description by location and a deed with full, correct, legal description was made the same day, and abstracts were left to be brought up to date. Our view is that the court properly found this to be a bona fide transaction under a contract made a year and a half before the marriage to plaintiff. Moreover, it appears that this transaction was only three weeks after the death of I. D. Caplinger's wife and that he afterwards stated he would never remarry. The basis of our review in a court-tried case is: "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01 (d). We consider the trial court's view of the facts to be correct and find there was a bona fide sale of the farm by I. D. Caplinger to James and Valemus on September 3, 1957.

In Wilkinson v. Vaughn, Mo.Sup., 419 S.W.2d 1, 8, this court affirmed a decree of specific performance to give the plaintiff title to land which the defendant had contracted to sell to him but refused to convey for the reason his wife whom he had married after he made the contract would not join in the deed. We said: "The title to this tract was in defendant as a single person. He married several months after the contract of sale, but dower was abolished in Missouri by the 1955 Probate Code, § 474.110, RSMo 1959, V.A.M.S. Clearly, a husband may now convey his separate property without his wife joining in the deed. Section 474.150, RSMo 1959, V.A.M.S., covering separate conveyances which may be in fraud of the marital rights of a surviving spouse, is not applicable under the facts here, but it necessarily recognizes that there can be conveyances of separate property of a spouse without the other spouse joining." This ruling is in accord with our discussion of the effect of Section 474.150(2) in Rein-

heimer v. Rhedans, Mo.Sup., 327 S.W.2d 823, 828–829. See also Noe v. Noe, 359 Mo. 867, 224 S.W.2d 77, 78, a case of conveyance without consideration, saying: "the fact that the deed was executed almost three years prior to the marriage and more than two years before the grantor contemplated marriage is a circumstance which weighs against the appellant's claim that the conveyance was in fraud of her marital rights."

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.