**In the ESTATE OF Howard O. WEBER.**

**June WEBER, Plaintiff-Respondent, Cross-Appellant,**

**v.**

**Joyce KNACKSTEDT and George Knackstedt, Defendants-Appellants, Cross-Respondents.**

**Nos. 54923 and 54956.**

Missouri Court of Appeals, Eastern District, Division Four.

May 16, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 21, 1989.

Application to Transfer Denied Aug. 1, 1989.

Michael B. Stern, Clayton, for defendants-appellants, cross-respondents.

Leritz, Reinert & Duree, John L. Sullivan, John L. Sullivan, P.C., Joyce York, St. Louis, for plaintiff-respondent, cross-appellant.

SMITH, Presiding Judge.

Defendants, George Knackstedt as personal representative of the estate of Howard Weber and Joyce Knackstedt appeal the order of the probate court awarding June Weber a portion of certain deposits in various financial institutions held at the time of Howard's death in the name of Howard Weber and Joyce Knackstedt as joint tenants with right of survivorship. June Weber has cross-appealed challenging certain provisions of the judgment. We reverse.

A companion case to this was previously before this court. *Weber v. Knackstedt*, 707 S.W.2d 800 (Mo.App.1986). In that case we held that a transfer by Howard Weber of real estate into the names of himself and Joyce Knackstedt was not made in fraud of June Weber's marital rights. The transfers now before us predate that transfer. Joyce Knackstedt is the only child of Howard Weber and was born of his marriage to Dorothy Weber. George Knackstedt is Joyce's husband. Dorothy died on August 27, 1977, ending a thirty-eight year marriage. At the time of her death the assets of the marriage were held in the joint names of Howard and Dorothy with right of survivorship. Within a few months Howard began the series of transactions leading to the instant case. In essence he transferred all of his monetary assets into bank or savings and loan accounts in the joint names of himself and Joyce. His expressed purpose for these actions was so that she would receive the money on his death without having to go through probate. These transactions occurred over a period of time, but, with the exception of one IRA, had been completed by April 1979. The IRA was created in September 1980, apparently from funds in an IRA existing at the date of Dorothy's death in which Joyce and her children were secondary beneficiaries. Howard received the income generated by these accounts and Joyce made no effort to exercise any control over them until after Howard's death. The total amount of the accounts exceeded $100,000. Howard's probate estate was approximately $6,000.

Sometime in late 1977 or 1978 (the witness was unsure which) Howard became active socially and began dating. In 1978 or 1979 he and a Ms. Peppers agreed to marry in June, but both decided they were being precipitate and the marriage did not occur. They discussed and agreed to the need for a pre-nuptial agreement in the event of their marriage. Howard dated at least two other women and the plaintiff. Plaintiff met Howard in November 1978. They first went out together in March 1979. They continued dating off and on until January 1981. Plaintiff testified that Howard asked her to marry him once prior to May 1980, which invitation she declined. She testified he again proposed in September 1980 and she accepted. Defendants' evidence was that the accepted proposal was in December 1980, that the marriage was delayed because of an argument and then occurred suddenly in January, 1981. In the prior case we affirmed the trial court's finding of fact that the accepted proposal occurred in December. Because the issue of September or December is immaterial to our resolution of the case we need not discuss the possible collateral estoppel effect of the fact finding in the prior case.

June and Howard were married on January 21, 1981. This was her third marriage, Howard's second. They lived together for six weeks. Howard filed for dissolution in April 1981. The case was heard but no judgment was entered. Howard died on December 3, 1981. Joyce was the residuary legatee of Howard's will. That will had been made several years prior to Dorothy's death and named Dorothy as primary legatee, if living, and Joyce as alternate legatee.

Plaintiff brought this action on the basis that the transfers of the accounts into the joint names of Howard and Joyce constituted a fraud on her marital rights. The trial court so found and this appeal followed.

Defendants have raised the issues of res judicata and collateral estoppel arising from our prior decision holding that a transfer subsequent to those involved here was not in fraud of plaintiff's marital rights. We decline to address that issue in view of our finding that the judgment of the trial court is based upon an erroneous application of the law.

The pattern of transfers here began long before any marriage to plaintiff was contemplated by Howard, and before Howard was even aware of the existence of plaintiff. Clearly Howard possessed no specific intent to defraud plaintiff. The transfers were made to provide a testamentary disposition of his assets to Howard's only child, the most natural object of his bounty. The evidence is abundant, and undisputed, that Howard and Joyce maintained a close and loving relationship throughout his life, that they talked and visited frequently, and that she looked after him and assisted him during various illnesses. The transfers were effectuated in such a way as to remove the bulk of Howard's assets from probate and to allow their immediate receipt and use by his daughter after his death. These are perfectly natural and reasonable considerations and do not inherently bespeak fraud on some unknown possible spouse of the future.

Plaintiff's position, and that of the trial court, is based on a series of cases which hypothesized the possibility of a generalized intent to defraud a future unknown spouse. In none of the cases was such intent found. *Jarvis v. Jarvis*, 286 Ill. 478, 122 N.E. 121 (1919); *Jarvis v. Jarvis*, 299 Ill. 89, 132 N.E. 432 (1921); *Noe v. Noe*, 359 Mo. 867, 224 S.W.2d 77 (1949); *Loe v. Downing*, 325 S.W.2d 479 (Mo.1959). In *Weber v. Knackstedt, supra*, we stated that: "In theory, it has been said, a person may decide to transfer his or her assets to defeat future marital rights before focusing on or selecting a specific fiancee or spouse ... Practically, proof of this generalized intent may be insurmountable." (l.c. Ftnt. 2, p. 804).

The first *Jarvis* case arose following the granting of a demurrer by the trial court. It therefore reached the court solely on the pleadings. The court in reversing the case stated that, "We can conceive of a situation where a transfer might be made in contemplation of marriage before an engagement had been entered into or any negotiations for such an engagement had with any specific individual and yet the transfer would be held to be fraudulent as against the interests of the one who thereafter married the grantor." l.c. 122 N.E. at 124. "Contemplation of marriage" was equated by the court to "contemplation of death" which it defined as not referring to the general expectation which every mortal entertains but to an apprehension arising from some existing condition of body or some impending peril, so compelling that the thought of death has taken so firm a hold on the donor's mind as to control and dictate his actions regarding his property and the business is transacted while contemplating death. l.c. 122 N.E. at 124. The court further referred to several cases stating that "if there be no treaty of marriage at the time of the conveyance, it is ... a strong circumstance tending to disprove fraud." l.c. 122 N.E. at 123. The second *Jarvis* case followed trial and upheld the trial court finding of no fraud. This was based upon the factual determination that at the time of the conveyance no potential matrimonial relationship between plaintiff and decedent existed and that the deed was executed for the purpose of carrying out a family settlement which had been long before determined by the decedent.

The *Noe* case, *supra*, relying upon *Jarvis I*, stated, "It is assumed, as the appellant argues, that an antenuptial conveyance may be in fraud of marital rights and set aside even though 'the particular person whom he was to marry had or had not been selected.'" [1]. The opinion is not clear whether this was an assumption for the sake of argument or a pronouncement of law. In any event the court found the transaction in question was not in fraud of the marital rights of a spouse unknown at

the time of the transaction. The court noted in arriving at that conclusion that there was no active deception or representation by decedent as to the property he owned nor was the marriage in reliance upon his representations or the fact that he owned the property. The transfer was not secretively or surreptitiously made even though it may not have been mentioned or disclosed prior to the marriage.

The *Loe* case, *supra*, recognized that as a general rule a voluntary conveyance made just prior to marriage without the knowledge of the other party to the marriage may constitute a fraud upon the other's marital rights. Then, in referring to *Jarvis* and *Noe*, the court stated, "However, it has been stated that an antenuptial conveyance may be in fraud of marital rights and set aside even though 'the particular person whom he was to marry had or had not been selected.'" [5–7]. That is not a statement that such is the law in this state; it is simply an acknowledgment that existence of the concept has been referred to. In *Loe* the conveyance was made by decedent and his then living first wife. In that situation decedent was not eligible to marry anyone and no inference could be drawn that he intended remarrying or that he intended to defraud a future wife of her marital rights.

There is evidence in this record that Howard was interested in remarriage but not that the thought had taken so firm a hold on his mind as to control and dictate his actions regarding his property. He had in fact mutually agreed with Ms. Peppers that they should not rush into a marriage. There is no evidence that plaintiff in any way relied upon Howard's assets or property in entering into the marriage. She testified they never discussed financial matters up until the time of the marriage or after. She was aware he had a home and he advised her that he had a monthly income of $1800 to $1900 per month from social security and "investments." She never inquired about the investments. Howard never made any representation to her concerning his assets or that he in fact owned any property. The transfers made were neither secretive nor surreptitious and the only indication in the record is that he did not discuss them with her because the subject was never raised by either of them. These were important factors in the *Noe* decision and we regard them as important here. The absence of any intention to marry plaintiff at the time of the transactions is, as stated in *Jarvis I*, "a strong circumstance tending to disprove fraud." l.c. 122 N.E. at 123.

The trial court concluded that the decedent's intention in making the transfers "was not only to avoid probate but also and primarily to make sure that the assets went to his daughter and not to anyone else, including a surviving spouse. Such an intention causes the transfers to be a fraud of the marital rights of a surviving spouse." This conclusion is based upon a misapplication of the law. There is nothing inherently improper or fraudulent in arranging for one's property to pass to the natural objects of one's bounty. Secs. 474.-120 and 474.220, RSMo 1986 specifically provide for prenuptial agreements to effectuate the parties' desires regarding disposition of their property without the restraints of statutes regarding marital rights. These agreements have been upheld. *In re Estate of Youngblood v. Youngblood*, 457 S.W.2d 750 (Mo. banc 1970). Howard had no need to utilize such an agreement because by the time of his engagement to plaintiff he had already utilized another statutory option to provide for the disposition he desired. We do note that before he had fully effectuated his intended disposition he discussed utilization of an antenuptial agreement with another fiancee. We also note that plaintiff presented no evidence that had such an agreement been requested she would have refused or that her marriage to Howard was in any way dependent upon his having assets in his sole name, part of which she could claim in the event of his death during the marriage.

Secs. 362.470 and 369.174 RSMo 1986, authorize the creation of joint accounts providing for right of survivorship. The statutes state that in the "absence of fraud or undue influence" the making of such deposits is conclusive evidence of the intention of the parties to the account to vest title in the survivor. Such accounts have been upheld. *In the Estate of LaGarce v.*

*Mouldon,* 487 S.W.2d 493 (Mo. banc 1972). (*LaGarce I*). Following remand and trial we, *In the Estate of LaGarce,* 532 S.W.2d 511 (Mo.App.1975) (*LaGarce II*), set aside such a deposit made shortly before the decedent's death, while he was married, as being a fraud on the rights of his wife. In so doing we applied the badges of fraud developed in *Nelson v. Nelson,* 512 S.W.2d 455 (Mo.App.1974). But nothing in *LaGarce II* indicates that the use of such deposits as a testamentary device carries with it any implication or presumption of fraud. *LaGarce I* in fact indicates the contrary, by holding that these are useful and legitimate devices for testamentary disposition. The conclusion of the trial court here casts a considerable pall over the use of such deposits by single persons as a device for testamentary disposition.

We do not find the four badges of fraud enunciated in the *Nelson* case *supra* to be of particular value in the fact situation presented here. Again the *Nelson* case involved a transfer of assets, in that case a joint deposit, during the marriage. The joint deposit was in the names of decedent and his sister. We believe the badges enunciated there have application where a specific intent to defraud a known person is involved, but are not sufficient where the case rests upon a generalized intent to defraud some possible unknown future spouse such as is before us. The badges in *Nelson* are (1) lack of consideration for the transfer, (2) retention of control by the transferor, (3) that the amount transferred is disproportionate to the value of the total estate, and (4) the transfer was secret or surreptitious. 512 S.W.2d at [4–9]. Where the joint deposit is made as a testamentary disposition to a natural object of his bounty by a single person with no specific marital plans and no specific marital partner in mind the first three badges are an inevitable part of such a testamentary plan. They are not badges of fraud; they are the heart and soul of the testamentary disposition. The fourth badge is particularly inap-

posite in the situation before us. The transfers were unknown to plaintiff here not because they were secretly made but because she was an unknown stranger when Howard commenced his plan for disposition of his estate. He was not hiding something from plaintiff because he did not know she existed and certainly did not know he would eventually marry her. The fraudulent intent must exist at the time the transactions occur implementing the plan of disposition. *Nelson v. Nelson, supra,* [11]. We are not prepared to accept a doctrine of after-acquired intent to defraud. Assuming that the "badges" of *Nelson* are established here, they are insufficient to prove an intent to defraud plaintiff.[1]

We find ourselves less able than the Illinois court in *Jarvis* to conceive of circumstances where it can be concluded that generalized intent to defraud an unknown future spouse can be established. We are not convinced that any prospective spouse may presume that the marital partner has not previously divested himself of assets or placed them into a position where upon his death they will pass to someone else, particularly where the marriage is one of "convenience" and one or both of the parties have children from a previous marriage. It is reasonable for a prospective spouse to expect that assets will not be diverted after the agreement for marriage or the marriage itself without being advised or consulted. The cases have recognized a right to relief in those circumstances. That situation does not exist here. We find no basis for the trial court's finding of fraud of marital rights. We need not reach the issues raised in the cross-appeal.

Judgment reversed.

STEPHAN and SATZ, JJ., concur.

---

**1.** The trial court apparently put much reliance on *Kelly v. Maxwell,* 628 S.W.2d 931 (Mo.App. 1982). We find that case distinguishable for several reasons. First, it involved a determination that no valid gift of the stock had been made by decedent and the property remained his. Secondly, it did not involve a transfer under Sec. 362.470 which changes the means by which gifts can be made. Thirdly, our opinion there was not based upon a finding of fraud of marital rights but solely on the absence of a valid gift. We find the case inapposite.